BACKGROUND
McLAUGHLIN, Circuit Judge:
In 1991 the Bank of Credit and Commerce International and its various related entities (“BCCI”) collapsed amidst claims of spectacular fraud and chicanery. In July of that year, bank regulators across the world moved to seize BCCI’s assets and bring the bank under court supervision. Plaintiffs are liquidators appointed by courts in England and the Cayman Islands to wind up BCCI’s affairs and to supervise the collection of its assets (“the Liquidators”). Defendants are successors in interest to various entities including Security Pacific International Bank and its affiliates (“SPIB”).
Founded in 1972 by a Pakistani banker named Agha Hasan Abedi, BCCI had a short, swashbuckling life. Abedi remained at its helm until 1988, when he had a heart attack. His chief lieutenant, Saiyid Mohammad Swaleh Naqvi succeeded him. Throughout Abedi’s and Naqvi’s reigns, BCCI was involved in countless fraudulent schemes, all designed to conceal its underlying insolvency. Eventually, the various intrigues collapsed and BCCI went bankrupt. Abedi has since died. Naqvi is serving an eight year federal prison term for his involvement in BCCI’s frauds.
The bank itself was indicted by the Manhattan District Attorney for corporate fraud, and by the Justice Department for violations of the Racketeer Influenced and Corrupt Organizations Act (“RICO”).
In late 1991, the Liquidators pled guilty on behalf of BCCI to the New York indictment. The factual allegations made by the New York indictment were that BCCI and its affiliates:
*82 made false and fraudulent pretenses, representations and promises as to ... the financial condition, net worth, and capital of the member entities of [BCCI], and the ability of [BCCI] to repay creditors.... The essence of the scheme was to convince depositors ... by means of false pretenses ... that [BCCI] was a safe financial repository and institution for funds.
In early 1992, the Liquidators entered into a similar plea on behalf of BCCI to the federal indictment. See United States v. BCCI Holdings, 69 F.Supp.2d 36, 41 (D.D.C.1999). The district judge who accepted the Liquidators’ plea, described it as “a kind of partnership agreement between the Department of Justice and the [Liquidators], under which they would jointly work to identify BCCI assets in this country” and return them to defrauded creditors and depositors. Id.
Both the federal and New York plea agreements expressly provided that the pleas were “not intended by the parties ... to preclude ... any civil action against any culpable BCCI officers, employees, agents or other entities.”
In July 1997, the Liquidators brought this action against SPIB in Supreme Court, New York County. The Liquidators also filed a petition in the United States Bankruptcy Court for the Southern District of New York, pursuant to 11 U.S.C. § 304 (allowing representatives of foreign bankrupt debtors to bring ancillary action in United States bankruptcy court to protect assets located in the United States). By virtue of that petition, the Liquidators obtained discovery from SPIB. In February 1998, SPIB removed the state court action to the United States District Court for the Southern District of New York (Patterson, /.) pursuant to 12 U.S.C. § 632 (providing for federal jurisdiction over suits arising out of transactions involving international banking).
The Liquidators’ complaint focuses on one of the many frauds allegedly committed by Abedi and Naqvi. Early in its existence, BCCI extended large loans to a Pakistani shipping group, the Gokal/Gulf Group. When the Gokal/Gulf Group was unable to repay these loans, Abedi and Naqvi secretly agreed to lend it even more money, so that the Gokal/Gulf Group could avail itself of further BCCI loan facilities. To disguise this sinister arrangement, Abedi and Naqvi arranged for BCCI to funnel money to the Gokal/Gulf Group through various conduit companies incorporated in Liberia (the “Conduit Companies”).
SPIB was the primary correspondent bank for BCCI in the United States. SPIB also maintained accounts for the Conduit Companies. Essentially, the complaint alleges that SPIB knowingly or recklessly aided BCCI in the commission of the Gokal/Gulf fraud. According to the complaint, Butch Ahmad and James Cano-ra — the SPIB account officers responsible for BCCI — had longstanding personal ties to BCCI and Gulf/Gokal personnel. Butch Ahmad had been friends with Abedi since 1960. And Mehdi Taqi, a senior employee of the Gokal/Gulf Group, as well as a member of its founding family, had dealt with James Canora when he had worked at another bank. Thus, when Canora moved to SPIB, Taqi used him to help open the accounts for the Conduit Companies.
The complaint alleges that, for four years, Canora and Ahmad executed transfers between the accounts of the Conduit Companies and BCCI at SPIB. Detailed instructions for these transfers were communicated to Canora from Taqi, who would then call to ensure that the transfers went through. On occasion, SPIB deviated from its own internal procedures to accommodate Taqi’s demands.
The complaint alleges that SPIB knew these transfers had no business purpose. BCCI’s money was transferred out of its SPIB account to the Conduit Companies and then ultimately shifted back into BCCI’s SPIB account, where it was recorded as a loan repayment from *83 GulfiGokal. A total of $1.5 billion was moved into the Conduit Companies’ accounts over the years, and most of it was transferred out the very same day. For its role in this arrangement, SPIB received rich transaction fees from BCCI.
The complaint sought money damages under New York law for: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; and (3) commercial bad faith. The Liquidators sought $530 million in damages for each of these three claims.
In May 1998, SPIB moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On April 8,1999, the district court granted the motion, concluding that the Liquidators lacked standing to sue SPIB. As an alternative justification for dismissal, the district court — relying on Federal Rule of Civil Procedure 9(b) — concluded that the complaint failed to adequately plead scien-ter, i.e., that SPIB knew of the wrongful activity, as is necessary to establish its three claims. See Wight v. BankAmerica Corp., No. 98 CIV. 2010(RPP), 1999 WL 199021 (S.D.N.Y. Apr.8, 1999). The clerk entered a final judgment on April 12th.
The Liquidators then moved for reconsideration pursuant to Rule 59(e). They sought to add as parties other liquidators appointed by a court in Luxembourg (who under Luxembourg law did have standing to assert claims on behalf of creditors and depositors), and a class of BCCI overseas creditors. The Liquidators also argued, for the first time, that SPIB should now be judicially estopped from denying the Liquidators’ standing based on an unrelated BCCI case, where SPIB had successfully argued that BCCI’s depositors also lacked standing to sue.
Finally, the Liquidators also sought leave to amend their complaint pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to bolster their allegations of scienter. In support of their motion to amend, the Liquidators relied primarily on the testimony of Canora given during a deposition they had taken through the ancillary bankruptcy proceeding in the Southern District Bankruptcy Court. The Liquidators also relied on a deposition given by Canora to England’s Serious Fraud Office in November 1993.
In those depositions, Canora testified that he was told by Taqi that the various accounts for the Conduit Companies, which he himself described as “shell” companies, were opened for “accounting purposes.” He admitted, however: “I don’t recall having complete knowledge of the rationale for the separate accounts.” Canora also testified that after BCCI was indicted in 1988 on an unrelated money laundering scheme, he and Ahmad acknowledged the “sad possibility” that BCCI might also be using SPIB to launder money. Nevertheless, they continued to cycle funds between BCCI and the Conduit Companies for another two years. Finally, Canora testified that: “We actually overcharged BCCI.” Later, Canora softened this somewhat by explaining that SPIB simply gave BCCI less of a discount than they could have gotten had they bargained harder.
The district court denied the motion for reconsideration, declining to grant the Liquidators leave to amend their complaint, reasoning that even with the addition of Canora’s testimony, the Liquidators still could not adequately allege scienter as required by Rule 9(b). For the same reason, the court also refused to consider the motion to add parties. Finally, the court held that the Liquidators’ judicial estoppel argument was improperly raised on a motion for reconsideration, and was in any case meritless. See Wight v. Bankamerica Corp., No. 98 CIV. 2010(RPP), 1999 WL 335321 (S.D.N.Y. May 26,1999).
The Liquidators now appeal.
DISCUSSION
I. Appellate Jurisdiction
As a threshold matter, we must consider whether we have appellate jurisdiction, *84 and in this case we find ourselves in a muddle of paperwork.
Under Rule 4 of the Federal Rules of Appellate Procedure, an appellant in a private civil case such as this has to appeal within 30 days from the date of entry of judgment. See Fed. R.App. P. 4(a)(1). Rule 4 also provides, however, that if a party has “timely ” filed a Rule 59 motion for reconsideration in the district court, the 30 days to file an appeal “runs ... from the entry of the order disposing of ... such ... motion.” Fed. R.App. P. 4(a)(4)(A) (emphasis added).
To be timely, a Rule 59 motion must be filed within 10 business days after entry of judgment. See Fed.R.Civ.P. 59(e); Lichtenberg v. Besicorp Group Inc., 204 F.3d 397, 401 (2d Cir.2000). “This time limitation is uncompromisable, for Civil Rule 6(b) provides, in pertinent part, that the district court ‘may not extend the time for taking any action under [Rule 59(e) ].’ ” Lichtenberg, 204 F.3d at 401 (citing Rodick v. City of Schenectady, 1 F.3d 1341, 1347 (2d Cir.1993)). Consequently, an untimely Rule 59 motion does not toll the 30 days appellants have to file their appeals under Rule 4. See id.
Here, the Liquidators’ Rule 59 papers are dated April 20, 1999. In addition, their brief represents that they “filed a timely” Rule 59 motion on April 21, 1999. If April 21st were indeed the filing date for the Rule 59 motion, we would have appellate jurisdiction. However, the Liquidators’ Notice of Motion, together with their accompanying Rule 59 papers, were not actually docketed or stamped “filed” by the Southern District’s Clerk’s Office until May 4, 1999. Because this was more than 10 business days after the April 12th entry of judgment, were we to deem May 4th as the true- filing date, the Rule 59 motion would not be timely and, thus, would not have extended the 30 days the Liquidators had to appeal. In such circumstances, we would lack appellate jurisdiction for it is clear that the Liquidators did not file their notice of appeal until June 15, 1999 — two months after the April 12th entry of judgment. See Life Ins. Co. of N.A. v. Von Valtier, 116 F.3d 279, 283 (7th Cir.1997) (“The timely filing of a motion under Rule 59(e) ... is a jurisdictional prerequisite to tolling the time to file a notice of appeal from a final judgment.”).
Troubled by this incongruity, we issued a sua sponte order on March 3, 2000, notifying the parties of the problem, and asking them to “explainf ] the discrepancy between the dates and whether and how that discrepancy affects the appellate jurisdiction of this Court.” Both sides responded to our request. From the parties’ submissions, the following undisputed facts emerge.
On April 21, 1999, the Liquidators submitted two copies of a motion for reconsideration pursuant to Fed.R.Civ.P. 59(e), together with the accompanying papers. The first copy was submitted to the Southern District’s Clerk’s Office, with the second going directly to the district judge’s chambers. Prior to these submissions, counsel for the Liquidators had telephoned the Clerk’s Office to ask a technical question of procedure. Specifically, counsel asked whether it was permissible to submit the declaration of Mr. Eric Lewis, Esq. (lead attorney for the Liquidators) which was to accompany the Liquidators’ Rule 59 motion, with a facsimile, rather than an original, signature. Apparently, Mr. Lewis was out of the country on another matter. According to the Liquidators, the Clerk’s Office assured them that a facsimile signature was acceptable.
Nevertheless, after receiving the Rule 59 motion, the Clerk’s Office then sent a standard form to Judge Patterson requesting permission to reject the Liquidators’ “papers” for failure to comply with Local Rule 11.1 which governs the form of pleadings. The specific lapse cited by the Clerk’s Office was the lack of an original signature on the Lewis declaration. The district judge signed the form, and then either he or someone else added (in a *85 handwritten notation on the form) that the absence of “proper binding for papers” was an additional reason for rejection.
The Clerk’s Office then mailed the offending declaration together with all the other Rule 59 papers, including the Notice of Motion, back to the Liquidators’ counsel. The Clerk’s Office requested that an original signature page be substituted into the Lewis declaration. When counsel received this package on April 30, 1999, they immediately called the Clerk’s Office to determine whether the Notice of Motion, which itself suffered from no technical infirmity (the defect, again, was only in the Lewis declaration), would be docketed on April 21, 1999, the date it was originally received. The Clerk’s Office responded that upon substitution of the original signature page, the entire filing would be docketed as of April 21st. Though counsel resubmitted their papers with both an original signature and, for good measure, a proper binding on the Lewis declaration, the promised docketing never occurred. Instead, the Liquidators’ Rule 59 papers, including their Notice of Motion, were not docketed until May 4, 1999. In the meantime, however, counsel called the district judge’s chambers to inquire whether the court desired a copy of the substituted filing. Chambers advised that the court already had a copy of the April 21st filing and that there was no need to furnish another copy.
SPIB maintains that under all of these facts, the Liquidators’ Rule 59 motion must be deemed “filed” on May 4, 1999 and, accordingly, we have no jurisdiction over this appeal. We conclude, however, that the Liquidators’ Rule 59 motion should properly be deemed filed on April 21, 1999, and, consequently, that we have appellate jurisdiction.
Our case law establishes that so long as a paper comports with the Local Rules, and there is no other valid basis to reject it, see Somlyo v. J. Lu-Rob Enters., 932 F.2d 1043, 1048 (2d Cir.1991), it is considered “filed” when delivered to the Clerk’s Office, Greenwood v. State of New York, Office of Mental Health, 842 F.2d 636, 639 (2d Cir.1988). Here, no one disputes that the Liquidators’ Notice of Motion itself fully comported with the Local Rules. Yet SPIB has offered no reason why that Notice was not docketed and stamped “filed” by the Clerk’s Office on April 21, 1999, the date of its original submission. As such, we conclude that the Notice of Motion itself was “filed” on April 21st, and was therefore timely.
To be sure, the Clerk’s Office rejected the entirety of the Liquidators’ Rule 59 motion, including the Notice of Motion, because of the offending Lewis declaration. But even assuming that the Notice of Motion itself was properly rejected, the district court itself clearly viewed the Liquidators’ Rule 59 motion as timely filed. Indeed, while the district court required appellants to resubmit all their Rule 59 papers to the Clerk’s Office (but not to chambers), it did not subsequently strike the resubmitted motion as untimely, even though it was obviously late when resubmitted. In such circumstances, we must assume that the district judge excused the Liquidators’ technical non-compliance with the Local Rules, and deemed their original papers filed on April 21st.
We approve of the district judge’s fair and pragmatic approach. Though the district court lacked the power to enlarge the 10 day statutory filing limit for Rule 59 motions, see Rodick, 1 F.3d at 1347, it did enjoy the discretion to excuse the Liquidators’ non-compliance with the Local Rules (which are not statutes) in the interest of justice. See Somlyo, 932 F.2d at 1048 (“the district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked”). Indeed, while “[i]t is the business of the Clerk’s Office to make sure that parties file documents that conform to the Local Rules .... it is the business of the district court to determine whether fairness demands that noncompliance be *86 excused.” Id. at 1049. Here, by pardoning the Liquidators’ technical default under Local Rule 11.1, and thereby allowing them to obtain appellate review, the district court “tailored] the Local Rules to best achieve a just outcome.” Id.
We have appellate jurisdiction.
II. Standing
Turning to the substance of this appeal, the Liquidators argue that the district court erred in dismissing the complaint for lack of standing. We agree.
We review the district court’s dismissal for lack of standing de novo. See Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1091 (2d Cir.1995); Board of Educ. v. New York State Teachers Retirement Sys., 60 F.3d 106, 109 (2d Cir.1995); Thompson v. County of Franklin, 15 F.3d 245, 249 (2d Cir.1994). In exercising our review, we must “ ‘accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.’ ” Thompson, 15 F.3d at 249 (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).
“The doctrine of standing incorporates both constitutional and prudential limitations on federal court jurisdiction .... ” Lamont v. Woods, 948 F.2d 825, 829 (2d Cir.1991); see Comer v. Cisneros, 37 F.3d 775, 787 (2d Cir.1994). The constitutional dimension derives from the “case or controversy” requirement of Article III, see Sullivan v. Syracuse Hous. Auth., 962 F.2d 1101, 1106 (2d Cir.1992), and requires the party invoking the power of a federal court to have at least a “personal stake in the outcome of the controversy.” Warth, 422 U.S. at 498, 95 S.Ct. 2197 (internal quotation marks omitted); see Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (reviewing constitutional prerequisites).
There are also several judge-made “prudential” requirements. Lamont, 948 F.2d at 829. These are rules of judicial self-restraint and are applied to further preserve the “ ‘the proper — and properly limited — role of the courts in a democratic society.’ ” Allen, 468 U.S. at 750, 104 S.Ct. 3315 (quoting Warth, 422 U.S. at 498, 95 S.Ct. 2197); see Sullivan, 962 F.2d at 1106. Foremost among the prudential requirements is the rule that a party must “assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.” Warth, 422 U.S. at 499, 95 S.Ct. 2197.
A. The Wagoner Rule
The Liquidators do not dispute that, like the trustees of a bankruptcy estate, they stand in the shoes of the defunct corporation, and they do not have standing to assert claims belonging to BCCI’s depositors and creditors. See In re Mediators, Inc., 105 F.3d 822, 825-26 (2d Cir.1997); Hirsch, 72 F.3d at 1093-94. The Liquidators argue, however, that they have standing to bring claims against SPIB on behalf of BCCI itself. Specifically, the Liquidators seek to assert BCCI’s claims against SPIB for cooperating with Abedi and Naqvi to defraud the bank.
In a bankruptcy proceeding, state law — here the law of New York— “determines whether a right to sue belongs to the debtor or to the individual creditors.” Mediators, 105 F.3d at 825 (citation omitted). In Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir.1991), we ruled that under governing New York law, “[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation.” Id. at 120 (citing Barnes v. Schatzkin, 215 A.D. 10, 212 N.Y.S. 536, 537 (1st Dep’t 1925) (other citations omitted)).
The rationale underlying the Wagoner rule derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation. See id.; see also Mediators, 105 F.3d at 826-27; Hirsch, 72 F.3d at *87 1094-95 (Connecticut law). Because management’s misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the Wagoner rule bars a trustee from suing to recover for a wrong that he himself essentially took part in. See Mediators, 105 F.3d at 826; Hirsch, 72 F.3d at 1094; Wagoner, 944 F.2d at 120. On this appeal, however, the Liquidators contend that the Wagoner rule does not apply because of the so-called “adverse interest exception.”
B. The Adverse Interest Exception
“Under New York law, the adverse interest exception rebuts the usual presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal.” Mediators, 105 F.3d at 827 (citing Center v. Hampton Affiliates, 66 N.Y.2d 782, 497 N.Y.S.2d 898, 899-900, 488 N.E.2d 828 (1985)). Under the exception, management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation. See Hampton Affiliates, 497 N.Y.S.2d at 900, 488 N.E.2d 828. The theory is that “where an agent, though ostensibly acting in the business of the principal, is really committing a fraud for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it.” Munroe v. Harriman, 85 F.2d 493, 495 (2d Cir.1936) (internal quotation marks and punctuation omitted). The adverse interest exception, however, is narrow and applies only when the agent has “totally abandoned” the principal’s interests. Mediators, 105 F.3d at 827 (quotation marks omitted).
The complaint in this case alleges that “BCCI was adversely dominated by corrupt [management], who, act[ed] in their own interests and not in the interests of BCCI....” Relying on this language, the district court found that the complaint pled facts sufficient to trigger the adverse interest exception.
SPIB takes issue with this finding, arguing that the complaint also alleges that BCCI was “dominated by corrupt prior senior managers and directors” and that in such circumstances the adverse interest exception does not operate to abrogate the Wagoner rule. See Mediators, 105 F.3d at 827 (exception does not apply “where the principal and agent are one and the same”); Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P., 212 B.R. 34, 36 (S.D.N.Y.1997) (“Wagoner rule ... applies where all relevant shareholders and/or decisionmakers are involved in the fraud.... ”).
We find no fault in the district court’s analysis. For purposes of SPIB’s Rule 12 motion, the district court correctly “construe[d] the complaint in favor” of the Liquidators and credited their adverse interest allegation as true. Thompson, 15 F.3d at 249; see Warth, 422 U.S. at 501, 95 S.Ct. 2197; cf. In re Wedtech Sec. Litig., 138 B.R. 5, 8 (S.D.N.Y.1992) (rejecting argument that plaintiff lacked standing under the Wagoner rule where issue of fact remained as to the key “question of whether the guilt of the corporate officers can be imputed to the corporation.”).
The district court went on to conclude, however, that the Liquidators were collaterally estopped from invoking the adverse interest exception because they pled guilty on behalf of BCCI to the New York indictment. More specifically, the court ruled that: (1) by pleading guilty to the New York indictment the Liquidators admitted that Abedi and Naqvi acted in the interests of BCCI by orchestrating the Gulf/Gokal scam; and (2) this admission collaterally estopped the Liquidators from invoking the adverse interest exception. We reject this reasoning.
1. Collateral Estoppel
“[T]he preclusive effect of a state court determination in a subsequent *88 federal action is determined by the rules of the state where the prior action occurred.” In re Sokol, 113 F.3d 303, 306 (2d Cir.1997) (citing 28 U.S.C. § 1738). In New York, “there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, therfe must have been a full and fair opportunity to contest the decision now said to be controlling.” Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996) (quoting Schwartz v. Public Administrator of the Bronx, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969)). Collateral estoppel attaches only if it is clear that these “strict requirements” have been satisfied, lest a party be “precluded from obtaining at least one full hearing on his or her claim.” Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328 (1979).
The district court concluded that the “full and fair opportunity” prong of collateral estoppel was satisfied in this case because in New York “a guilty plea is accorded the same preclusive effect ... as is a conviction after trial.” Wight, 1999 WL 199021 at *5 (internal quotation marks omitted).
We are not convinced that this is an accurate statement of New York law. True, some lower New York courts have afforded guilty pleas preclusive effect. See Abrahao v. Perrault, 147 A.D.2d 824, 537 N.Y.S.2d 913, 914 (3d Dep’t 1989); Merchants Mutual Ins. Co. v. Arzillo, 98 A.D.2d 495, 472 N.Y.S.2d 97, 103 (2d Dep’t 1984). Others, however, have declined to do so, reasoning that “a judgment based on a plea of guilty does not carry with it the safeguards which accompany a judgment after trial.” Davis v. Hanna, 97 A.D.2d 943, 468 N.Y.S.2d 729, 730 (4th Dep’t 1983) (relying on Vavolizza v. Krieger, 33 N.Y.2d 351, 352 N.Y.S.2d 919, 923, 308 N.E.2d 439 (1974)).
Moreover, • we • question whether any New York court would apply collateral es-toppel based 1 on the unique guilty plea involved here. The New York plea agreement expressly provided, that it would not preclude the Liquidators from bringing actions against third parties like SPIB. Indeed, in another (unrelated) BCCI case, the district court held that the identically worded federal plea agreement did not deprive the Liquidators of standing to bring fraud claims on behalf of BCCI against its former legal counsel. See BCCI (Luxembourg) Holdings, S.A. v. Clifford, 964 F.Supp. 468, 478 (D.D.C.1997). The Clifford court reasoned that “[t]o interpret the Plea Agreement contrary to the intent of the parties” would result in “extreme unfairness.” 964 F.Supp. at 479. We suspect that if squarely confronted with the issue, the New York courts would bow to similar considerations. See D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 563 N.Y.S.2d 24, 26, 564 N.E.2d 634 (1990) (collateral estop-pel “is grounded on concepts of fairness and should not be rigidly or mechanically applied”).
Ultimately, however, we need not take this issue head on. This is so because the other prerequisite of collateral estoppel under New York law was not met. Specifically, the same issue of whether Abedi and Naqvi acted in the interests of BCCI by orchestrating the Gulf/Gokal scam was not necessarily decided by the Liquidators guilty plea. See Schwartz, 298 N.Y.S.2d at 960, 246 N.E.2d 725.
The Liquidators pled guilty on behalf of BCCI to various corporate frauds, such as overstating its capital, and authorizing kickbacks to other financial organizations to deter them from 'scrutinizing the bank’s rotting capital structure. New York Penal Law § 20.20(2)(b) provides in pertinent part:.
A corporation is guilty of an offense when ... [t]he conduct constituting the offense is engaged in, authorized, solicited, requested, commanded, or reckless *89 ly tolerated by ... a high managerial agent acting within the scope of his employment and in behalf of the corporation.
The essential facts alleged by the indictment to support the Liquidators’ plea were that BCCI, together with Abedi and Naqvi, engaged in a scheme to convince “depositors and other banking and financial institutions, by means of false pretenses, representations, and promises that the BCCI was a safe financial repository and institution for funds.”
It may be true that by pleading guilty to these allegations the Liquidators admitted that Abedi and Naqvi were acting generally in the interests of BCCI. To use the language of § 20.20(2)(b), Abedi and Naqvi may have admitted that they were acting “in behalf of’ BCCI in generally running their various scams (rather than adversely to the bank’s interests as would be necessary for the adverse interest exception to apply).
The problem is that the Liquidators did not condescend to particulars and they never specifically admitted that Abedi and Naqvi acted in the interests of BCCI by orchestrating the Gulf/Gokal scam. Indeed, the Gulf/Gokal scam is nowhere even mentioned in the indictment. Accordingly, Abedi and Naqvi could have been acting in favor of BCCI in one or more of their many other scams, but could have been acting adversely to the bank’s interests in the Guli/Gokal scam.
In sum, we believe that the Liquidators did not necessarily concede that Abedi and Naqvi acted in the interests of BCCI by orchestrating the Gulf/Gokal scam. We, therefore, conclude that the district court erred in applying collateral estoppel on the basis of the New York guilty plea. Accordingly, the Liquidators may continue to litigate the potential applicability of the adverse interest exception. Of course, we express no opinion on whether the exception may ultimately apply.
2. Judicial Estoppel
The Liquidators see no need at all for any further analysis of the adverse interest issue. Going for the jugular, they assert that in an earlier BCCI case — Hamid v. Price Waterhouse & Co., No. CV 91-4488, 1992 WL 696398 (C.D.Cal. April 30, 1992), aff'd 51 F.3d 1411 (9th Cir.1995)— SPIB succeeded in persuading the court that BCCI’s depositors lacked standing to sue SPIB, based on an argument that is inconsistent with its position in this case. According to the Liquidators: (1) SPIB argued in Hamid that the depositors lacked standing because their claims against SPIB were derivative of the claims owned by the Liquidators; and (2) in the course of making that argument, SPIB conceded that the Liquidators would have standing to sue it because managers’ misconduct would not be attributed to BCCI. In this way, the Liquidators maintain, SPIB was able to persuade the Hamid court to deny standing to the depositors. Because this position, the Liquidators argue, is the exact opposite of SPIB’s position in this case, SPIB should be judicially estopped from arguing against the Liquidators’ standing here. We disagree.
Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits. Bates v. Long Island R.R., 997 F.2d 1028, 1037-38 (2d Cir.1993). As an equitable doctrine, judicial estoppel does not rest easily with the concept of standing, which in both its constitutional and prudential dimensions, is a prerequisite to federal subject matter jurisdiction. See Thompson, 15 F.3d at 248. Indeed, it has been cautioned that “special care” should be taken in considering whether judicial estoppel should even apply “to matters affecting federal subject matter jurisdiction.” 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477, at 784 (1981) (citing In re Southwestern Bell Tel. Co., 535 F.2d 859, 861 *90 (holding that judicial estoppel could not be applied to defeat diversity jurisdiction, and stating that “[wjhatever the scope of the doctrine may be, so far as we have been able to discover it has never been employed to prevent a party from taking advantage of a federal forum when he otherwise meets the ... requirements of federal jurisdiction.... Judicial estoppel principles cannot conclusively establish jurisdictional facts.”)), aff'd en banc, 542 F.2d 297 (5th Cir.1976), rev’d on other grounds, Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977); but see Selected Risks Ins. Co. v. Kobelinski, 421 F.Supp. 431, 435 (E.D.Pa.1976) (holding that defendant was judicially estopped from asserting subject matter jurisdiction because it had previously won a dismissal for lack of subject matter jurisdiction).
Special care in this area makes eminently good sense. It is axiomatic that a lack of subject matter jurisdiction may be raised at any time “ ‘even by a party who originally asserted jurisdiction.’ ” United States v. Leon, 203 F.3d 162, 164 n. 2 (2d Cir.2000) (quoting United States v. Heyward-Robinson Co., 430 F.2d 1077, 1080 (2d Cir.1970)). Thus, we have already held that arguments for or against standing may not be waived. See Thompson, 15 F.3d at 248 (citing National Wildlife Fed’n v. United States, 626 F.2d 917, 924 n. 13 (D.C.Cir.1980) (voluntary waiver of challenge to prudential standing is necessarily ineffective because standing implicates federal jurisdiction)). The bottom line is that irrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits. See Thompson, 15 F.3d at 248.
In the circumstances of this case, our independent duty to ensure the Liquidators have standing cannot be hamstrung by the arguments previously made by SPIB in the Hamid case. To the contrary, we conclude that the court should have the benefit of whatever illumination SPIB’s arguments on the standing question can provide.
A party invoking judicial estoppel must show that: (1) his adversary “advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.” AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 628 (2d Cir.1996). “[T]here must be a true inconsistency between the statements in the two proceedings. If the statements can be reconciled there is no occasion to apply an estoppel.” Simon v. Safelite Glass Corp., 128 F.3d 68, 72-73 (2d Cir.1997). Here, these requirements are not satisfied by the various statements relied upon by the Liquidators in support of its judicial estoppel argument.
In Hamid, the closest SPIB itself came to advancing an inconsistent position on the issue of the Liquidators’ standing to assert the common law claims advanced here, was joining in a brief to the Ninth Circuit that included a footnote stating:
[The depositors-plaintiffs] complain that [the third-party defendants (77 in number including SPIB) ] have not conceded that the liquidators have standing to sue and argue that B CCI’s liquidators would have difficulty succeeding on any claim that they did have standing to bring because of the possibility that the misconduct of B CCI’s former management would be attributed to the bank. Defendants have never denied the liquidators standing to sue third parties for alleged looting of BCCI, only that there would be merit to such a suit. Whether BCCI’s liquidators would be successful in pursuing any claim is irrelevant, of course, to the question of whether they own the claim.
Even if we assume that this Delphic footnote is inconsistent with SPIB’s position in this case, it is not a valid predicate for judicial estoppel. This is so, because *91 the Ninth Circuit did not address in any way the question of whether management misconduct could be imputed to BCCI, and could therefore deprive the Liquidators of standing to assert claims against SPIB. See Hamid, 51 F.3d at 1414 (“The issues we resolve involve timeliness of appeal, judicial recusal, the derivative nature of the depositors’ RICO claims, and the application of the Alien Tort Statute.”). Accordingly, because SPIB’s allegedly inconsistent position in Hamid was not “adopted by the court in some manner” judicial estoppel cannot apply to this ease. AXA Marine, 84 F.3d at 628.
III. Adequacy of the Complaint
The district court dismissed the complaint on the alternative ground that it failed to adequately plead scienter as required by Rule 9(b). The court then denied the Liquidators leave to amend their complaint to bolster their allegations of scienter. The Liquidators argue that dismissal on this alternative ground, without leave to amend, was erroneous. We agree.
We review the district court’s decision to deny leave to amend for abuse of discretion, mindful that Rule 15(a) requires that such “leave shall be freely given when justice so requires.” Fed.R.Civ.P. 15(a); see Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); see also Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir.1986) (“Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend.” (internal quotation marks omitted)).
The Liquidators assert three claims: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; and (3) commercial bad faith. As the district court pointed out, a required element of each of these claims under New York law is knoioledge of the underlying wrong. See Fidelity Funding of Calif., Inc. v. Reinhold, 79 F.Supp.2d 110, 122 (E.D.N.Y.1997) (a claim for aiding and abetting fraud requires plaintiff to plead facts showing “the existence of a fraud, defendant’s knowledge of the fraud, and that the defendant provided substantial assistance to advance the fraud’s commission.”) (citing Franco v. English, 210 A.D.2d 630, 620 N.Y.S.2d 156, 159 (3d Dep’t 1994)); S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 847-48 (2d Cir.1987) (a claim for aiding and abetting a breach of fiduciary duty requires plaintiff to plead facts showing “(1) a breach by a fiduciary ..., [and] (2) that the defendant knowingly induced or participated in the breach.... ”); Peck v. Chase Manhattan Bank, N.A., 190 A.D.2d 547, 593 N.Y.S.2d 509, 510-11 (1st Dep’t 1993) (“[a] cause of action for commercial bad faith against a bank requires allegations of ... wrongdoing, together with allegations of the bank’s actual knowledge of the ... wrongdoing that amounts to bad faith or allegations of complicity by bank principals in alleged confederation with the wrongdoers.”) (citing Prudential-Bache Sec., Inc. v. Citibank, N.A., 73 N.Y.2d 263, 539 N.Y.S.2d 699, 705-07, 536 N.E.2d 1118 (1989)).
The district court denied leave to amend on the ground of futility, concluding that even with the Canora deposition testimony, the Liquidators were incapable of adequately pleading this requisite knowledge. We disagree.
Rule 9(b) requires that “the circumstances constituting fraud ... be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.” Fed. R.Civ.P. 9(b). Thus, while the “actual ... fraud alleged must be stated with particularity ... the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity.” Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir.1996) (citing Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir.1994)). We apply the more general standard to scienter for the simple reason that “a plaintiff realistically cannot be expected to plead a defendant’s actual state of mind.” Connecticut Nat'l *92 Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987).
Under these standards, the complaint, as bolstered by the Canora testimony, passes muster under Rule 9(b). First, the underlying wrong itself is pled with particularity: SPIB allegedly helped Abedi and Naqvi orchestrate the Gokal/Gulf fraud by arranging for and indeed supervising the transfer of money through the various accounts. Moreover, the complaint describes in detail the complex facts and circumstances surrounding the mechanics of SPIB’s alleged money laundering.
In addition, the Liquidators have offered facts to show that SPIB had both a clear opportunity and a strong financial motive to aid the Gokal/Gulf fraud. See Cohen, 25 F.3d at 1173 (citing Turkish v. Kasenetz, 27 F.3d 23, 28 (2d Cir.1994) (scienter sufficiently pleaded by the complaint’s allegations that the defendants had a clear opportunity and motive to engage in the alleged fraud)). First, there were the personal relationships Ahmad and Canora had with Mehdi Taqi of Gokal/Gulf, and with Abedi himself. More than that, however, there is Canora’s deposition testimony that: (1) he knew the Conduit Companies were mere “shell” companies; (2) he suspected that there was no business purpose to the cycling of money between BCCI and the Conduit Companies; (3) he and Ahmad acknowledged the “sad possibility” that BCCI might be using SPIB to launder money; and (4) BCCI paid richer fees than SPIB received from other clients. Finally, there is the allegation that SPIB continued to cycle money for BCCI for two years after it knew that the bank was involved in money laundering. These allegations more than suffice to plead the requisite knowledge on the part of SPIB. See Cohen, 25 F.3d at 1174 (reversing Rule 9(b) dismissal where “sufficient facts were pleaded to suggest that plaintiffs may be able to prove that defendants more likely than not knew” of fraud, and where complaint “spelled out circumstances from which it could easily be inferred that the [defendants] had a motive” to commit fraud).
The Liquidators have alleged sufficient facts to satisfy the requirements of Rule 9(b) and should have been allowed to amend their complaint. We remand so that they may do so.
III. Remaining Issues
The Liquidators also appeal the district court’s denial of their motion to add parties. The district court did not delve into the merits of this motion, but instead denied it on the grounds of futility. On this appeal, the merits of the issues underlying the Liquidators motion have been argued and briefed only cursorily. In such circumstances, we remand to allow the district court to consider those issues in the first instance. See Thompson, 15 F.3d at 253.
CONCLUSION
We have considered the parties’ remaining contentions and find them to be unavailing. Accordingly, the judgment of the district court dismissing appellants’ complaint is REVERSED and this case is REMANDED for further proceedings.