**LAW OFFICES OF CURTIS V. TRINKO, LLP, Individually and on Behalf of Themselves and All Others Similarly Situated, Plaintiff,**

v.

**BELL ATLANTIC CORP., Defendant.**

**No. 00 Civ.1910(SHS).**

United States District Court,
S.D. New York.

Dec. 6, 2000.

Joseph P. Garland, Klein & Solomon, LLP, New York, NY, Kenneth A. Elan, Law Office of Kenneth A. Elan, New York, NY, Peter S. Linden, Kirby, McInerney & Squire, L.L.P., New York, NY, Joseph P. Garland, New York, NY, for plaintiff.

Dan K. Webb, Winston & Strawn, Chicago, IL, Mark C. Hansen, Kellogg, Huber, Hansen, Todd & Evans, Washington, DC, Henry B. Gutman, Joseph F. Tringali, Simpson Thacher & Bartlett, New York, NY, Richard G. Taranto, Farr & Taranto, Washington, DC, John Thorne, Verizon Communications, Arlington, VA, for defendant.

*OPINION AND ORDER*

STEIN, District Judge.

Defendant Bell Atlantic Corp. has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that plaintiff lacks standing and that the complaint fails to state a claim. For the reasons set forth below, that motion is granted, with leave to replead in part.

## I. BACKGROUND

Pursuant to the Telecommunications Act of 1996, local telephone companies may enter the market for long-distance telephone service provided they face competition in the local telephone service market. 47 U.S.C. § 271(c). To promote development of competition in local telephone service markets, the Act requires that incumbent local telephone companies provide certain services to new entrants, including permitting access to the incumbent local telephone company's network by the new entrant—called "interconnection"—and providing retail services to new entrants at wholesale rates. 47 U.S.C. § 251(c).

According to the complaint, Bell Atlantic, an incumbent local telephone company, applied for and received regulatory approval to offer long-distance telephone service in certain parts of the Northeast. Compl. ¶ 11. Bell Atlantic has allegedly not, however, assisted its local phone service competitors as required by the Telecommunications Act. Id ¶ 12. Instead, Bell Atlantic is alleged to have:

fulfilled orders of other Local Phone Service providers' customers [only] after fulfilling those for its own Local Phone Service, has failed to fill a substantial number of orders for other Local Phone Service providers' customers substantially identical in circumstances to its own Local Phone Service customers for whom it has filled orders, and has systematically failed to inform other Local Phone Service providers of the status of their orders with Bell Atlantic concerning [the Local Phone Service providers'] customers.

Id. ¶ 31.

On March 9, 2000, the Federal Communications Commission ("FCC") issued a consent decree in which Bell Atlantic agreed to pay a $3 million fine to end an investigation into its alleged failure to provide adequate access to local phone service competitors in New York. *Id.* ¶ 32; *Bell Atlantic—New York Authorization Under Section 271 of the Communications Act to Provide In–Region, InterLATA Service in the State of New York,* 15 FCC Rec. 5413, 2000 WL 571154 (2000). Bell Atlantic also agreed to pay $10 million to competing local telephone service providers for injuries resulting from its misconduct in handling their orders. Compl. ¶ 32.

The next day, the Law Offices of Curtis V. Trinko, LLP, a law firm organized as a limited liability partnership under New York law and a customer of one of Bell Atlantic's competitors in the local telephone service market, filed this action on behalf of itself and all others similarly situated. The Trinko partnership alleges that the members of the class have been damaged by Bell Atlantic's provision of "a level of service that is materially below the level that is accorded customers of Bell Atlantic's Local Phone Service in functionally identical circumstances." *Id.* ¶ 12. The complaint asserts a claim for unlawful monopolization in violation of section 2 of the Sherman Act, claims for violations of section 251 and 202 of the Communications Act, and a claim for tortious interference with contract. The complaint alleges that the relevant market is the provision of local, non-wireless telephone service in those areas in which Bell Atlantic is the "incumbent local exchange carrier" within the meaning of the 1996 Telecommunications Act, and that Bell Atlantic possesses monopoly power in that market. *Id.* ¶¶ 18–25.

Bell Atlantic now moves for dismissal of the complaint in its entirety on the grounds that the Trinko partnership lacks standing to bring the Sherman Act claim and the Communications Act claims, that plaintiff's Communications Act claims are not cognizable, that plaintiff has failed to state a claim for tortious interference with contract, that plaintiff has not sufficiently pled damages, and that all of plaintiff's claims for damages are barred by the filed tariff doctrine.

## II. DISCUSSION

When deciding a motion to dismiss a claim pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept all of the well-pleaded facts as true and draw all reasonable inferences from those allegations in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The complaint will survive a motion to dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. The Sherman Act Claim

Bell Atlantic contends that because its alleged anticompetitive conduct is violating its duties to competing carriers under the Telecommunications Act, any injury suffered by the alleged class, as customers of those carriers, "is, by definition, indirect and derivative of the competing carriers' alleged direct market injury." Def.'s Mem. at 12. Thus, according to defendant, the Trinko partnership lacks standing to pursue its Sherman Act claim. Bell Atlantic also argues that to hold otherwise would subject it to the risk of duplicative recovery, *i.e.,* Bell Atlantic might have to compensate both the new entrants into the local telephone service market and their customers for the same harm, assuming liability exists in the first place.

■ Courts have consistently held that both competitors and consumers may assert antitrust claims arising from harms that flow from anticompetitive conduct. *E.g., SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.,* 48 F.3d 39, 45 (1st Cir.1995) ("[T]he presumptively 'proper' [antitrust] plaintiff is a customer who obtains services in the threatened market or a competitor who seeks to serve that market."); *Continental Orthopedic Appliances, Inc. v.*

*Health Insurance Plan of Greater New York,* 956 F.Supp. 367, 372 (E.D.N.Y.1997) ("To have standing, a plaintiff must be a competitor, participant, supplier or consumer in the relevant market."). Indeed, in *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), upon which Bell Atlantic itself relies, the United States Supreme Court found that the plaintiff lacked standing because it "was neither a consumer nor a competitor in the market in which trade was restrained." 459 U.S. at 539, 103 S.Ct. 897. Plaintiff, as a consumer in the alleged relevant market, has standing to assert an antitrust claim.

Bell Atlantic cites the United States Supreme Court decision in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), for the proposition that permitting the Trinko partnership to maintain this action would impermissibly subject Bell Atlantic to the risk of duplicative recovery. However, the issue in *Illinois Brick* was whether "indirect purchasers," *i.e.,* customers of the monopolists' customers, could maintain an action on the theory that all of the harm—supracompetitive prices—had been passed on to them. *Illinois Brick,* 431 U.S. at 726–28, 97 S.Ct. 2061. The Supreme Court held that suits by such "indirect purchasers" were barred by the rule announced in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), prohibiting antitrust defendants from introducing evidence that the antitrust plaintiff had passed on an illegal overcharge to others. *Illinois Brick,* 431 U.S. at 745–47, 97 S.Ct. 2061. The Court explained that permitting suits by indirect purchasers "inject[ed] extremely complex issues into the case" as follows:

> Added to the uncertainty of how much of an overcharge could be established at trial would be the uncertainty of how that overcharge would be apportioned among the various plaintiffs. This additional uncertainty would further reduce the incentive to sue. The combination of increasing the costs and diffusing the benefits of bringing a treble-damages action could seriously impair this important weapon of antitrust enforcement.

*Id.* at 745, 97 S.Ct. 2061.

These problems of apportionment are not present here. Any harm to Bell Atlantic's competitors would be harms from artificial barriers to entry into the market place, *e.g.,* lost profits from customers either lost or never obtained because of Bell Atlantic's alleged misconduct. The plaintiff and other class members, though, were, by definition, not lost customers, but customers from whom the competitors presumably profited in spite of Bell Atlantic's misdeeds. The harm that these customers are alleging—damages resulting from poorer service than they would otherwise have received had Bell Atlantic acted lawfully—is wholly distinct from the harm suffered by the competitors. The rule of *Illinois Brick* does not apply to this case.

■ Even though plaintiff has standing, however, its antitrust claim must nevertheless be dismissed because the Trinko partnership has not pled facts that would entitle it to relief. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. The elements of a monopolization claim under section 2 of the Sherman Act are: (1) possession of monopoly power in the relevant market; and (2) willful acquisition or maintenance of that power, as distinguished from "business growth or development as a consequence of superior product, business acumen or historic accident." *Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 97 (2d Cir.1998) (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)). The complaint fails to establish the second element.

■ The complaint points to only one act or series of acts taken by Bell Atlantic to maintain its monopoly power. Bell Atlantic's failure to cooperate with local competitors as required by 47 U.S.C. § 251. Even a monopolist, however, has no gener-

al duty under the antitrust laws to cooperate with competitors. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 600, 105 S.Ct. 2847 (1985); *United States Football League v. National Football League,* 842 F.2d 1335, 1360–61 (2d Cir.1988). Indeed, because all competition necessarily involves impairing the opportunities of rivals, liability under the antitrust laws arises only when such impairment "does not further competition on the merits or does so in an unnecessarily restrictive way." *Aspen Skiing,* 472 U.S. at 605 n. 32, 105 S.Ct. 2847; *see also United States Football League,* 842 F.2d at 1359.

The affirmative duties imposed by the Telecommunications Act are not coterminous with the duty of a monopolist to refrain from exclusionary practices. *Goldwasser v. Ameritech Corp.,* 222 F.3d 390, 400 (7th Cir.2000). Moreover, the mere fact that a monopolist has violated another statute does not transform such offense into a violation of the antitrust laws. *Id.* Thus, plaintiff has failed to allege any "willful acquisition or maintenance" of monopoly power by Bell Atlantic. *See Tops Markets,* 142 F.3d at 97. Plaintiff's antitrust claim is dismissed.

### B. *Communications Act Claims*

The Communications Act provides, in relevant part, that:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47 U.S.C. § 206. The Act also provides that "Any person claiming to be damaged by any common carrier subject to the provisions of this chapter . . . may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction." 47 U.S.C. § 207.

The Trinko partnership has brought two claims pursuant to those sections. First, it claims that it and the other class members have been damaged by Bell Atlantic's failure to meet the obligations imposed on it by 47 U.S.C. § 251 to cooperate with competing local carriers, as discussed above. Second, the Trinko partnership claims that it and the other class members have been damaged by Bell Atlantic's unlawful discrimination in services between its customers and customers of its local competitors in violation section 202(a) of the Act, which provides that:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in . . . services . . . , directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. § 202(a).

#### 1. *Cognizability*

Bell Atlantic contends that these claims are not cognizable. It notes that sections 206 and 207 were part of the original 1934 Communications Act, and argues that violations of provisions of the 1996 Telecommunications Act, such as section 251, cannot form the basis of a section 207 claim because those claims would interfere with the overarching regulatory scheme of the 1996 Act. Thus, says Bell Atlantic, no court has ever recognized an action pursuant to section 207 based on a violation a provision of the 1996 Act. Bell Atlantic further ar-

gues that because the Trinko partnership's claim based on an alleged violation of section 202—a provision of the 1934 Act—is based on the same conduct that forms part of its claim based on violation of section 251, it, too, must not be cognizable lest plaintiffs "circumvent" the regulatory process prescribed by the 1996 Act.

■ However, violations of the 1996 Act can form the basis for liability pursuant to sections 206 and 207. As the Supreme Court has noted, "the 1996 Act was adopted, not as a freestanding enactment, but as an amendment to, and hence part of, [the 1934 Act]." *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 378 n. 5, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). Accordingly, when Judge Ward of this district considered a suit pursuant to sections 206 and 207 based on a violation of another provision of the 1996 Act, he recognized that "plaintiffs do have a private right of action under Sections 206 and 207 of the Telecommunications Act for damages suffered as a result of a violation of the [1996] Act." *Conboy v. AT & T Corp.*, 84 F.Supp.2d 492, 500 (S.D.N.Y.2000).

Moreover, contrary to Bell Atlantic's position, suits by consumer plaintiffs are not *per se* incompatible with the regulatory scheme of the 1996 Act. Any incompatibility must be evaluated on a case-by-case basis and will depend on the specific provision alleged to have been violated as well as the identity of the party asserting the claim.

In this case, the specific provision of section 251 that Bell Atlantic is alleged to have violated is 47 U.S.C. § 251(c)(2)(C), which details an incumbent carrier's duty to provide "interconnection ... that is at least equal in quality to that provided by the local exchange carrier to itself ... or any other party to which it provides interconnection." The parties asserting the claim are customers of interconnected carriers. Such a claim does not directly implicate the regulatory scheme Congress created to govern the formation of interconnection agreements. *See* 47 U.S.C. § 252. Thus, the cases relied on by Bell Atlantic involving potential competitors attempting to circumvent the provisions of 47 U.S.C. § 252 are inapposite. *See Atlantic Alliance Telecommunications, Inc. v. Bell Atlantic*, No. 99 CIV. 4915, slip op., (E.D.N.Y. April 17, 2000), *Indiana Bell Tel. Co. v. McCarty*, 30 F.Supp.2d 1100, 1104 (S.D.Ind.1998).

To the extent that this or a similar claim might indirectly implicate the regulatory scheme, the filed tariff doctrine and the doctrine of primary jurisdiction are available to insure that judicial action is consistent with the regulatory process. *See, e.g., Oh v. AT & T Corp.*, 76 F.Supp.2d 551, 554–58 (D.N.J.1999). Application of these doctrines on a case-by-case basis is superior to a *per se* rule that would have courts disregard the explicit provision of a private right of action in 47 U.S.C. § 207. *Contra Goldwasser v. Ameritech Corp.*, No. 97 C 6788, 1998 WL 60878, at *10 (N.D.Ill. Feb. 4, 1998) ("[B]ecause of the potential for frustrating the goals of the 1996 Act, Plaintiffs should not be permitted standing" to assert a section 207 claim based on a violation of section 251.), *aff'd on other grounds*, 222 F.3d 390 (7th Cir.2000). Similarly, *AT & T Communications of Cal., Inc. v. Pacific Bell*, 60 F.Supp.2d 997 (N.D.Cal.1999), on which Bell Atlantic relies, does not provide it with adequate succor. The holding in that case is that an implied right of action does not exist pursuant to section 206. 60 F.Supp.2d at 1000. In this case, plaintiff is proceeding pursuant to the explicit private right of action created by section 207, not an implied private right of action.

Plaintiff's other section 207 claim is based on a violation of section 202(a). Defendant does not point to a regulatory regime specific to section 202(a), but contends instead that because the section 202(a) claim "is based on the very same conduct as Plaintiff's section 251 claim," the section 202(a) claim would impermissibly interfere with the regulatory process in the same manner as the section 251 claim.

Def.'s Mem. at 8. Because the Court rejects Bell Atlantic's argument as to the section 251 claim, its argument as to the section 202(a) claim is rejected as well.

### 2. *Standing*

Bell Atlantic next argues that the Trinko partnership lacks standing to bring the Communications Act claims because the rights created by sections 251 and 202 do not belong to plaintiff, but instead belong to the competing local carriers. Thus, Bell Atlantic maintains, any injury suffered by plaintiff and other class members is indirect and derivative of the injury suffered by the competing local carriers through defendant's alleged violation of those rights.

"The doctrine of standing incorporates both constitutional and prudential limitations on federal court jurisdiction." *Wight v. Bankamerica Corp.*, 219 F.3d 79, 86 (2d Cir.2000) (quoting *Lamont v. Woods*, 948 F.2d 825, 829 (2d Cir.1991)); *Comer v. Cisneros*, 37 F.3d 775, 787 (2d Cir.1994). The constitutional dimension, which derives from the "case or controversy" requirement of Article III, *see Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106 (2d Cir.1992), "requires the party invoking the power of a federal court to have at least a 'personal stake in the outcome of the controversy.'" *Wight*, 219 F.3d at 86 (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *see also Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

■ There are also several judicially created "prudential" requirements. *Lamont*, 948 F.2d at 829. These rules · of judicial self-restraint are applied to further preserve a "'proper—and properly limited—role of the courts in a democratic society.'" *Allen*, 468 U.S. at 750, 104 S.Ct. 3315 (quoting *Warth*, 422 U.S. at 498, 95 S.Ct. 2197); *see also Sullivan*, 962 F.2d at 1106. "Foremost among the prudential requirements is the rule that a party must 'assert his own legal rights and interests, and cannot rest his claim to relief on the

legal rights or interests of third parties.'" *Wight*, 219 F.3d at 86 (quoting *Warth*, 422 U.S. at 499, 95 S.Ct. 2197). Properly understood, the "prudential" limit on standing to raise the claims of another is a cannon of statutory interpretation that raises a presumption against such standing, which presumption Congress is free to override. *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1278 (D.C.Cir. 1994).

■ Applying these principles to this case, plaintiff has satisfied the constitutional standing requirements. As discussed above, the Trinko partnership has alleged injuries to itself and other class members, which injuries give it the "personal stake in the outcome of the controversy" that Article III demands. *See Warth*, 422 U.S. at 498, 95 S.Ct. 2197.

The prudential standing requirements are another matter. Section 251 imposes duties on incumbent carriers only as to local competitors, and those rights are triggered only when a competing carrier requests interconnection. 47 U.S.C. §§ 251, 252. Thus, the Trinko partnership's section 251 claim is not a claim for damages resulting from a violation of its rights, but rather a claim for damages resulting from a violation of a third party's rights, *i.e.*, the rights of the Trinko partnership's local telephone company. Because the rule that a party cannot rest his claim to relief on the legal rights or interests of third parties is the "foremost" tenet of prudential standing, *Wight*, 219 F.3d at 86, the Trinko partnership's section 207 claim based on a violation of section 251 must be dismissed.

■ The duties imposed on carriers by section 202(a), on the other hand, do not apply only to "competitors", but instead apply more broadly to "any particular person, class of persons, or locality" to which that carrier provides service. 47 U.S.C. § 202(a). Thus, if plaintiff and other class members receive service from Bell Atlan-

tic, it owes them duties of non-discrimination pursuant to section 202(a) even if Bell Atlantic is acting on behalf of its competitors pursuant to an interconnection agreement. If defendant has breached such duties, the Trinko partnership's damages flowing from that breach arise from a violation of its rights, and not the rights of any third party.

The complaint, however, contains no allegation that the Trinko partnership or any other class member receives any service directly from Bell Atlantic. Instead, the Trinko partnership alleges that Bell Atlantic has failed to provide non-discriminatory service to its competitors. *E.g.,* Compl. ¶ 31. Accordingly, plaintiff's section 207 claim based on violations of section 202(a) is dismissed with leave to replead the direct provision of services by Bell Atlantic to the Trinko partnership and other class members on discriminatory terms.

### 3. *Other Arguments*

Having dismissed plaintiff's Communications Act claims for lack of standing, the Court need not address Bell Atlantic's arguments that the Trinko partnership has failed to sufficiently plead damages and that its claims are barred by the filed tariff doctrine.

### C. *Tortious Interference Claim*

As this Court has dismissed all of plaintiff's federal claims, there remains no independent basis for federal jurisdiction over the remaining state law claim for tortious interference. That claim, therefore, is dismissed. *See* 18 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988). Accordingly, the Court need not address Bell Atlantic's arguments that the Trinko partnership has failed to state a claim for tortious interference and that the claim is also barred by the filed tariff doctrine.

### III. CONCLUSION

For the reasons set forth above, the motion to dismiss the complaint is granted. Plaintiff may replead its Communications Act claim based on defendant's alleged violation of 47 U.S.C. § 202(a) as well as its supplemental claim for tortious interference with contract within 20 days of this Opinion and Order.