105 F.3d 822
 65 USLW 2551, 37 Collier Bankr.Cas.2d 723,
30 Bankr.Ct.Dec. 353,
Bankr. L. Rep. P 77,279
 In re The MEDIATORS, INC., Debtor.
The MEDIATORS, INC., Plaintiff-Appellant,
v.
Richard MANNEY, Gloria Manney, Patricia Manney, John and/or
Jane Doe # 1 to # 10, Doe Corporation # 2 to # 10, Doe
Partnership # 1 to # 10, Doe Foundation # 1 to # 10, the
names of the foregoing thirty-nine defendants being unknown,
it being intended to designate parties who have received
transfers, directly or indirectly, from plaintiff or Richard
or Gloria Manney or who were directors of plaintiff, Defendants,
Citibank, N.A., Astor, Weiss, Kaplan & Rosenblum, formerly
known as Astor, Weiss & Newmann and Arthur H.
Kaplan, Defendants-Appellees.
 No. 628, Docket 96-5063.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 3, 1996.
Decided Jan. 30, 1997.
 
 David W. Dykhouse, Patterson, Belknap, Webb & Tyler, New York City (Stephen P. Younger, Barbara A. McCormick and Christopher J. McDonald, of counsel), for Plaintiff-Appellant.
 George A Zimmerman, Skadden, Arps, Slate, Meagher & Flom, New York City (Troy E. Elder and Jacob E. Hollinger (law student), of counsel), for Defendant-Appellee Citibank, N.A.
 Steven Verveniotis, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Gerald A. Stein, of counsel), for DefendantsAppellees Astor, Weiss, Kaplan & Rosenblum and Arthur H. Kaplan.
 Before: NEWMAN, Chief Judge, OAKES and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This is an appeal from the dismissal of an adversary action arising in a bankruptcy proceeding. The committee of unsecured creditors ("Committee") of the debtor, The Media tors, Inc. ("Mediators"), suing on a claim said to belong to the debtor, appeals from Judge Haight's order dismissing its action against Citibank, N.A. ("Citibank"), Astor, Weiss, Kaplan & Rosenblum, and Arthur H. Kaplan (the "Astor defendants"), for lack of standing pursuant to Rule 12(b)(6), Fed.R.Civ.P. The Committee challenges the dismissal, arguing that appellants aided and abetted the Mediators' president and sole shareholder, Richard Manney, in his scheme to purchase the Mediators' art collection at an undervalued price in order to shield the collection from the corporation's creditors. The Committee claims that this scheme breached the Mediators' fiduciary duty to preserve its assets for creditors while insolvent. The district court held that the Committee, standing in the shoes of the debtor, could not recover from third parties for their participation in a scheme that the debtor had itself initiated and joined in. In re The Mediators, Inc., 190 B.R. 515, 527-28 (S.D.N.Y.1995). We agree. We also reject the Committee's request that we overturn our holding in In re Century Brass Products, Inc., 22 F.3d 37 (2d Cir.1994).
 
 BACKGROUND
 
 2
 We recount the facts as alleged in the complaint and view them in the light most favorable to the Committee. A more extensive recital of the facts can be found in the district court's opinion. In re The Mediators, Inc., 190 B.R. at 518-21.
 
 
 3
 The Mediators is a New York corporation primarily engaged in the business of acquiring radio and television advertising time for its clients in exchange for the clients' products and services rather than for cash. At all pertinent times, Richard Manney was the corporation's sole shareholder, chief executive officer, and chairman. His wife, Gloria Manney, was treasurer, secretary, and director of the corporation but played only a limited role in managing the company.
 
 
 4
 The Manneys are avid art collectors. Beginning in the late 1970's they caused the Mediators to purchase millions of dollars worth of art, some of which was financed through borrowing by the corporation. In 1987, the Mediators encountered severe financial problems stemming in part from a $17 million judgment against it for breaching a contract with Wang Laboratories, Inc. Anticipating that the Mediators' precarious financial situation might result in bankruptcy, Manney hired the law firm, Astor, Weiss, Kaplan & Rosenblum, and the accounting firm, Morris J. Cohen & Co., to facilitate a transaction that would shield the art collection from liquidation in bankruptcy. (Morris J. Cohen & Co. was named a defendant in this action but settled before this appeal was heard. No further mention of its role is necessary.) The firms are alleged to have recommended that Manney buy the artwork from the Mediators at a discounted price, thereby turning the collection into Manney's personal asset protected by the corporate veil in the event of the Mediators' bankruptcy.
 
 
 5
 The transfer of the art commenced on June 29, 1988. Manney borrowed $12,000,000 from Citibank and purchased the art collection from the Mediators for $12,646,690. The Mediators guaranteed Citibank's loan to Manney for $12,125,000. In addition, the Mediators tendered a one-year deposit of $4,125,000 to Citibank, the principal and proceeds of which secured a portion of the loan. The artwork itself further secured the loan. The $12,646,690 price Manney paid was the art collection's book value, its original cost. However, it is alleged that the collection had greatly appreciated in value and was worth much more than its original purchase price. In the Committee's view, the transaction stripped the Mediators of its assets while rendering it liable to Citibank for the cost of the self-dealing purchase.
 
 
 6
 Three years after the art transfer, on June 2, 1991, an involuntary liquidation petition under Chapter 7 of the Bankruptcy Code was filed against the Mediators by American Broadcasting Companies, Inc., ABC Radio Network Inc., and ESPN, Inc. On September 13, 1991, the bankruptcy court converted the case to Chapter 11. On October 16, 1991, the United States Bankruptcy Trustee appointed the plaintiff as an unsecured creditors' committee pursuant to 11 U.S.C. § 1102. The bankruptcy court then authorized the Committee to bring this suit because Manney had failed to pursue the action on behalf of the corporation.
 
 
 7
 The original complaint was filed with the bankruptcy court on April 22, 1992. It alleged that the Manneys had enriched themselves at the corporation's expense by appropriating corporate assets for little or no consideration. The first amended complaint alleged, inter alia, that Citibank and the Astor defendants aided and abetted the Mediators in its breach of its fiduciary duty to its creditors; that Citibank and the Astor defendants were unjustly enriched; that Citibank participated in a fraudulent conveyance of the art collection; that the Astor defendants breached their contract in recommending that Manney engage in fraudulent transfers of the corporate artwork; and that the Mediators were entitled to avoid Citibank's security interests in the artwork.
 
 
 8
 The district court held that the Committee lacked standing as to the claims against the non-Manney defendants. It reasoned that the Committee, suing on behalf of the Mediators, could not bring claims against third parties for facilitating a fraudulent transfer of assets, where the Mediators also participated in the misconduct. In re The Mediators, 190 B.R. at 526-31. The court further held that the fraudulent conveyance claims were time-barred as to Citibank, pursuant to Section 546(a) of the Bankruptcy Code and our decision in In re Century Brass Products, Inc., 22 F.3d 37, 39 (2d Cir.1994) (applying the two-year statute of limitations of § 546(a) to debtors-in-possession, as of date of bankruptcy petition). In re The Mediators, 190 B.R. at 523-26.
 
 DISCUSSION
 
 9
 A. The Claim for Aiding and Abetting a Fiduciary's Breach of Duty
 
 
 10
 We emphasize at the outset that the issue before us is whether a creditors' committee standing in the shoes of the debtor may bring a claim against parties alleged to have aided and abetted the debtor's breach of fiduciary duties. This particular action is by no means the only remedy for such acts available under New York law. Indeed, that is the problem. Where third parties aid and abet a fiduciary's breach of duty to creditors--as is claimed here--the creditors may bring an action in their own right against such parties. See Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 120 (2d Cir.1991) ("A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors....").[1] The appellees' papers state that a claim by creditors in their own right would be time-barred under New York law. Whether that is so is not before us, and we must address the present action in the form in which it was brought.[2]
 
 
 11
 In a bankruptcy proceeding, state law determines whether a right to sue belongs to the debtor or to the individual creditors. St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 700 (2d Cir.1989). The Bankruptcy Code places a trustee in the shoes of the bankrupt corporation and affords the trustee standing to assert any claims that the corporation could have instituted prior to filing its petition for bankruptcy. See 11 U.S.C. §§ 541, 542; Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416, 428-29, 92 S.Ct. 1678, 1685-86, 32 L.Ed.2d 195 (1972); Wagoner, 944 F.2d at 118. In the instant matter, the Committee, while not a trustee in bankruptcy, is in a position analogous to a trustee because it is suing on behalf of the debtor. For that reason, the district court treated the Committee as if it were a trustee for the purpose of determining standing. In re The Mediators, 190 B.R. at 526 n. 6. The Committee does not challenge that analysis.
 
 
 12
 "[A] bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." Wagoner, 944 F.2d at 118. Were the law otherwise, the debtor's assets would be depleted to enforce rights possessed by third parties, see Barnes v. Schatzkin, 215 A.D. 10, 212 N.Y.S. 536, 539 (1st Dep't 1925), and defendants would face the danger of duplicative recoveries.
 
 
 13
 Under New York law, claims such as the present one belong to the creditors qua creditors. As a result, an action by a trustee in bankruptcy on such claims is deemed by New York courts to be the equivalent of an action based on claims owned by third parties rather than by the bankrupt estate. See Barnes, 212 N.Y.S. at 537-39. A trustee may not, therefore, bring such an action. Id.
 
 
 14
 Our decisions in two recent cases support this conclusion. In Wagoner, we held that, under New York law, a bankruptcy trustee had no standing to sue Shearson Lehman Hutton for aiding and abetting the unlawful investment activity of one Kirschner, the president and sole shareholder of a bankrupt corporation, HMK Management Corporation. 944 F.2d at 119-20. Kirschner had solicited loans from members of his church in exchange for HMK notes and other paper. Id. at 116. He then used the proceeds of these loans to trade on HMK's account at Shearson. Id. After the trades went sour, HMK filed bankruptcy, and the trustee brought suit against Shearson alleging that the brokerage firm manipulated Kirschner into excessively speculative trading. Id. at 117. We concluded that HMK itself had committed fraud because Kirschner, as "HMK's sole stockholder and decision maker, ... not only knew of the bad investments, but actively forwarded them." Id. at 120. We held that the trustee lacked standing to assert its claim against Shearson because, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." Id.
 
 
 15
 Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (2d Cir.1995), although involving Connecticut law, reaffirmed this rule. In Hirsch we held that a bankruptcy trustee lacked standing to sue Arthur Anderson & Co., an accounting firm hired by the debtor, Colonial Realty Company, for malpractice in connection with Colonial's Ponzi-scheme real-estate-investment operation. We held that the trustee was "precluded from asserting the professional malpractice claims alleged in the Complaint because of the Debtors' collaboration with the defendants-appellees in promulgating and promoting the Colonial Ponzi schemes." Id. at 1094.
 
 
 16
 The Mediators are in a position similar to that of HMK and Colonial Realty. Because Manney was the sole shareholder and decision-maker of the Mediators, his orchestration of the art transfer rendered the Mediators a participant. Therefore, the Mediators has no standing to assert aiding-and-abetting claims against third parties for cooperating in the very misconduct that it had initiated. See Barnes, 212 N.Y.S. at 539 (trustee cannot sue third parties for aiding and abetting fraud by debtor).
 
 
 17
 The caselaw relied upon by the Committee, Clarkson Co. Ltd. v. Shaheen, 660 F.2d 506, 512 (2d Cir.1981), cert. denied, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982), New York Credit Men's Adjustment Bureau, Inc. v. Weiss, 278 A.D. 501, 105 N.Y.S.2d 604, 606 (1st Dep't 1951), aff'd, 305 N.Y. 1, 110 N.E.2d 397 (1953), and In re STN Enterprises, 779 F.2d 901, 902 (2d Cir.1985), all involved actions in the name of the corporation against a fiduciary of the corporation, not against third parties. We agree that a bankruptcy trustee, suing on behalf of the debtor under New York law, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries. See, e.g., In re Keene Corporation, 164 B.R. 844, 853 (Bankr.S.D.N.Y.1994) ("Section 720 of New York's Business Corporation law expressly authorizes a corporation or bankruptcy trustee to sue the corporation's officers and directors for breach of fiduciary duty, including misappropriation or diversion of assets"). None of these cases, however, allows a trustee to pursue aiding and abetting claims against third parties.
 
 
 18
 The Committee also invokes the so-called "adverse interest exception" in an attempt to distinguish Wagoner and Hirsch. In Wagoner and Hirsch, it argues, the corporations were deemed guilty of misconduct because the fraudulent schemes were intended by their corporate officers to benefit the corporations, whereas the Mediators was victimized by Manney. In the Committee's view, under the adverse interest exception, Manney's actions cannot be imputed to the Mediators because the art transfer was detrimental to the corporation's interests.
 
 
 19
 Under New York law, the adverse interest exception rebuts the usual presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal. Center v. Hampton Affiliates, 66 N.Y.2d 782, 784, 497 N.Y.S.2d 898, 488 N.E.2d 828 (1985). The exception is a narrow one and applies only when the agent has "totally abandoned" the principal's interests. Id. at 784-85, 497 N.Y.S.2d 898, 488 N.E.2d 828. The Committee argues that the facts in Wagoner and Hirsch fell outside this exception because Kirschner's trading activity and Colonial Realty's Ponzi scheme sought gains for their respective companies. Manney, on the other hand, aimed to cheat the Mediators out of receiving fair value for its assets. We disagree.
 
 
 20
 First, we expressly considered Kirschner's misconduct in Wagoner to be entirely adverse to HMK. The Wagoner complaint alleged that Kirschner "engaged in conduct intended to strip HMK of its assets." 944 F.2d at 117. We thus clearly viewed Kirschner's investment activity as at least as detrimental to HMK as Manney's purchase of the artworks was to the Mediators.
 
 
 21
 Second, the adverse interest exception does not apply to cases in which the principal is a corporation and the agent is its sole shareholder. As noted, the adverse interest exception is to a presumption that an agent has discharged the duty of disclosing material facts to the principal. Under New York law, where the agent is defrauding the principal, such disclosure cannot be presumed because it would defeat--or have defeated--the fraud. Center, 66 N.Y.2d at 784, 497 N.Y.S.2d 898, 488 N.E.2d 828. However, where the principal and agent are one and the same, the adverse interest exception is itself subject to an exception styled the "sole actor" rule. Harold Gill Renschlein & William A. Gregory, The Law of Agency and Partnership § 64 at 121 (2d ed. 1990). This rule imputes the agent's knowledge to the principal notwithstanding the agent's self-dealing because the party that should have been informed was the agent itself albeit in its capacity as principal. See Munroe v. Harriman, 85 F.2d 493, 495-97 (2d Cir.1936) (knowledge of self-dealing dominant officer imputed to bank). Where, as here, a sole shareholder is alleged to have stripped the corporation of assets, the adverse interest exception to the presumption of knowledge cannot apply. Cf. In re Wedtech Securities Litigation, 138 B.R. 5, 8 (S.D.N.Y.1992) (refusing to impute misconduct to the corporation where the guilty officers were not the sole shareholders). We agree with Judge Haight, therefore, that "Manney was the Mediators' sole shareholder and decision maker, and therefore whatever decisions he made were, by definition, authorized by, and made on behalf of, the corporation." In re The Mediators, 190 B.R. at 528.
 
 
 22
 B. The Fraudulent Conveyance Claims Against Citibank
 
 
 23
 The Committee also asserts fraudulent conveyance claims against Citibank pursuant to Section 544(b) of the Bankruptcy Code, which allows a bankruptcy trustee to avoid certain transfers of property. The district court dismissed these claims because they were time-barred under the two-year statute of limitations period of Section 546(a). In re The Mediators, 190 B.R. at 525-26. Section 546(a) provided[3], in pertinent part:
 
 
 24
 (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced the earlier of--
 
 
 25
 (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1202, or 1302 of this title; or
 
 
 26
 (2) the time the case is closed or dismissed.
 
 
 27
 11 U.S.C. § 546(a). We held in In re Century Brass Products, Inc., 22 F.3d 37 (2d Cir.1994), that the two year-limitation applies to debtors-in-possession as well as to bankruptcy trustees. The Committee first named Citibank as a defendant in this action on May 11, 1994--more than two years after Manney became the Mediators' debtor-in-possession after an involuntary Chapter 7 petition was filed in July 1991 and the proceedings were converted to Chapter 11 in September 1991. The district court was therefore correct in concluding that the Committee's fraudulent conveyance claims were time-barred.
 
 
 28
 The Committee urges us to overturn our decision in In re Century Brass Products, supra, and to adopt the rule of the Seventh and Fourth Circuits, limiting the application of Section 546(a) to trustees. See Gleischman Sumner Co. v. King, Weiser, Edelman & Bazar, 69 F.3d 799 (7th Cir.1995); Maurice Sporting Goods, Inc. v. Maxway Corp., 27 F.3d 980, 982-84 (4th Cir.), cert. denied, 513 U.S. 1018, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994). We note, however, that other circuits agree with In re Century Brass, see In re Coastal Group, 13 F.3d 81, 86 (3d Cir.1994); In re Softwaire Centre International, Inc., 994 F.2d 682, 683 (9th Cir.1993); Zilkha Energy Co. v. Leighton, 920 F.2d 1520, 1523-24 (10th Cir.1990), and we see no compelling reason to overturn it. In any event, a panel may not overturn a prior decision of this court, Samuels v. Mann, 13 F.3d 522, 526 (2d Cir.1993), cert. denied, 513 U.S.849, 115 S.Ct. 145, 130 L.Ed.2d 85 (1994), that power being vested only in an in banc court, id. This panel, moreover, sees no compelling reason to ask for an in banc session of the court to address the merits of In re Century Brass.[4]
 
 
 29
 We therefore affirm.
 
 
 
 [1]
 A committee of creditors standing in the shoes of the debtor may bring an action to recover property that was unlawfully conveyed under Section 720 of New York's Business Corporation Law. That section allows a corporation (or presumably those in the shoes of the corporation) "[t]o set aside an unlawful conveyance, assignment or transfer of corporate assets where the transferee knew of its unlawfulness." The Committee might therefore have sued for the return of the misappropriated property--the art collection. See In re Leasing Consultants, Inc., 592 F.2d 103, 108-10 (2d Cir.1979); In re Keene Corp., 164 B.R. 844, 853 (Bankr.S.D.N.Y.1994); Atlanta Shipping Corp. v. Chemical Bank, 631 F.Supp. 335, 349-50 (S.D.N.Y.1986), aff'd, 818 F.2d 240 (2d Cir.1987). Appellees state that this remedy was not pursued because it is time-barred
 
 
 [2]
 Nothing we say of course affects the Committee's action against the Manneys
 
 
 [3]
 Section 546(a) was amended on October 22, 1994. The amended section states, in pertinent part:
 (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
 (1) the later of--
 (A) 2 years after the entry of the order for relief; or
 (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
 (2) the time the case is closed or dismissed.
 11 U.S.C. § 546(a). The amendments, however, do not apply to cases commenced under Title 11 before October 22, 1994. See 11 U.S.C.A. § 546 (Historical and Statutory Notes); Pub.L. 103-394 § 702 (1994). Because the Mediators' Chapter 7 bankruptcy petition was converted to Chapter 11 bankruptcy in 1991, the Committee's claims are not subject to the 1994 amendments. We need not, therefore, examine the continued validity of In re Century Brass under the amended Section 546(a).
 
 
 [4]
 Moreover, even if we treat the Committee as equivalent to a trustee, it is still time-barred from asserting avoidance claims against Citibank under any interpretation of Section 546(a). The Committee did not raise its claims against Citibank until May 1994, more than two years after it was appointed in October 1991