### In re SCOTT ACQUISITION CORP., et al., Debtors.

Montague S. Claybrook, as Chapter 7 Trustee for Debtors Scott Acquisition Corp. and its subsidiary Scotty's, Inc., Plaintiff,

v.

Broad and Cassel, P.A., Robert F. Mallett, L.L.C., and Robert F. Mallett, Defendants.

Bankruptcy No. 04–12594(PJW).
Adversary No. 06–50821(PJW).

United States Bankruptcy Court, D. Delaware.

March 6, 2007.

William D. Sullivan, Elihu E. Allinson, William D. Sullivan, LLC, Wilmington, DE, Isaac J. Mitrani, Loren H. Cohen, Mitrani, Rynor & Adamsky, P.A., Miami, FL, for Defendants.

Christopher Simon, Donna L. Harris, Cross & Simon, LLC, Wilmington, DE, Brett M. Amron, Scott Underwood, Genovese Joblove & Battista, P.A., Miami, FL, for Plaintiff Chapter 7 Trustee.

### MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion (Adv.Doc. # 15) of defendants Broad and Cassel, P.A., Robert F. Mallett, L.L.C. and Robert F. Mallett (collectively, "Defendants") to dismiss the complaint of Montague S. Claybrook ("Plaintiff"), the chapter 7 trustee of the estates of Scott Acquisition Corporation ("Scott") and Scotty's Inc. ("Scotty's") (collectively, the "Debtors").[1] For the reasons outlined below, I will grant Defendants' motion with respect to Plaintiff's claims of legal malpractice (Count I) and breach of fiduciary duty (Count II) and deny the motion with

---

1. Since Scotty's was a wholly owned subsidiary of Scott, and both corporations were operated by the same people, I will use the term "Debtors" to refer to either or both of these debtor corporations.

respect to Plaintiff's fraudulent transfers claims (Count III).

## BACKGROUND

The following alleged facts are taken from Plaintiff's complaint and assumed to be true for the purposes of this opinion. Defendant Robert F. Mallett, an attorney licensed to practice in Florida, is the sole member of Defendant law firm Robert F. Mallett, L.L.C., and was a partner in Defendant professional association Broad and Cassel P.A. (Adv.Doc. # 1, ¶¶ 12–14.) Defendant Mallett, at all relevant times, represented the Debtors and acted on behalf of the other two defendants. (*Id.* at ¶ 14.) The Debtors operated a chain of hardware stores called Do–It–Best, which specialized in the sale of building materials and home improvement products. (*Id.* at ¶ 17.) The Debtors acquired the chain on June 8, 1998 when the Debtors' management team, which at the time included Thomas E. Morris ("Morris"), David Bost ("Bost"), Robert Pacos ("Pacos"), Joe Patten ("Patten"), and Douglas Bowne ("Bowne") (collectively, the "Insiders"), formed Scott Acquisition Corporation and orchestrated the purchase of Scotty's from its then parent company, GIB (the "1998 Acquisition"). (*Id.* at ¶ 19.) Plaintiff claims that Defendants acted as legal counsel to the Debtors and several members of the management team in negotiating the 1998 Acquisition. (*Id.* at ¶ 24.) To finance the purchase, the Debtors obtained a loan and a revolving credit line from Congress Financial Corporation (Florida) ("Congress") secured by virtually all of the Debtors' assets. (*Id.* at ¶ 21.)

In December 2001, February 2003 and December 2003, the Debtors entered into a series of transactions to sell several of the recently acquired assets and then lease them back from the purchasers (the "Sale/Leaseback Transactions"). (*Id.* at ¶¶ 27, 34.) Plaintiff alleges that the Insiders caused the Debtors to sell eleven of these properties at less than market value prices to special purpose entities formed by the Insiders. (*Id.* at ¶¶ 33, 41.) In order to sell the properties, the Debtors had to get Congress to agree to release the liens on the property. Plaintiff alleges that the Insiders participated in negotiations with Congress, and therefore knew how much the Debtors had to pay Congress to release the Debtors from the liens. (*Id.* at ¶ 30.) The Insiders then caused the Debtors to sell the properties for amounts that were only sufficient to pay Congress. (*Id.* at ¶ 45.) The Debtors did not seek shareholder approval for the Sale/Leaseback Transactions with the Insiders. (*Id.* at ¶ 46.) The transactions were approved by four members of Scotty's' board of directors, including three Insiders, Morris, Pacos and Patten, and John Kelly ("Kelly"), the Debtors' General Counsel. (*Id.*) Several of the Insiders have since "flipped" the properties they purchased from the Debtors for a considerable profit. (*Id.* at ¶ 47.)

Defendants represented both the Insiders and the Debtors in Sale/Leaseback Transactions, which representation, Plaintiff claims, violated the Florida Bar Rule 4–1.7(a) prohibition on dual representation. (*Id.* at ¶ 48.) Defendants prepared conflict waiver letters, which the Debtors and the Insiders signed before entering into the Sale/Leaseback Transactions. (*Id.* at ¶ 49.)

In December 2000, Plaintiff claims that Defendants once again engaged in improper dual representation when it represented both the Debtors and several of the Debtors' largest shareholders in negotiating a sub-debt financing program. (*Id.* at ¶ 50.) Under the program, the Debtors' eleven largest shareholders, all either directors, officers or employees of the Debtors, pur-

chased sub-debt debentures from the Debtors bearing interest of 12% and having a maturity date of September 8, 2004. (*Id.* at ¶ 55.) The complaint alleges that Morris, Pacos and Kelly were among the shareholders who purchased the debentures, and they approved the issuance of the debentures on behalf of the Debtors without discussing whether the program was beneficial or detrimental to the Debtors. (*Id.* at ¶ 54.) According to the complaint, the high rate of interest on the debentures was a burden to the Debtors. (*Id.* at ¶ 56.) Defendants represented both the Debtors and several, if not all, of the participating shareholders in this transaction. (*Id.* at ¶¶ 51, 60.)

In July 2004, the Debtors again borrowed from several Insiders, this time issuing $3.5 million in promissory notes at an interest rate of 12% in favor of Patten and Kelly and special purpose entities set up by Pacos and Morris. (*Id.* at ¶ 64.) Defendants once again acted as counsel to all of the parties involved, and once again prepared conflict waiver letters, which the parties signed. (*Id.* at ¶ 65–66.)

Citing Defendants' representation of parties on both sides of the Sale/Leaseback Transactions and the loan transactions between the Debtors and the Insiders, Plaintiff alleges that Defendants: (1) engaged in legal malpractice (Count I), (2) breached their fiduciary duty to the Debtors by failing to act loyally and without conflict (Count II) and (3) received fraudulent transfers from the Debtors, given that the legal services that Defendants provided to Debtors were not reasonably equivalent in value to the fees that Defendants collected (Count III). (*Id.* at ¶¶ 75–97.)

The Debtors filed a voluntary petition for bankruptcy under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*,[2] on September 10, 2004. On June 27, 2005 the Debtors' chapter 11 cases were converted to chapter 7. (Adv. Doc. # 1, ¶ 10.) Plaintiff filed the complaint on September 7, 2006. In a related matter, as the Debtors' appointed chapter 7 trustee, Plaintiff brought claims against the Insiders for breach of fiduciary duty and breach of contract related to the misconduct described above. (Adv.Proc.# 05–30112(PJW).) On June 23, 2006, this Court denied a motion to dismiss filed by the Insiders. *Claybrook v. Morris (In re Scott Acquisition Corp.),* 344 B.R. 283 (Bankr.D.Del.2006).

## DISCUSSION

### I. *Standard for Granting a Motion to Dismiss under Rule 12(b)(6)*

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts must accept as true all allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997); *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). A motion to dismiss should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *D.P. Enters. Inc. v. Bucks County Cmty. Coll.,* 725 F.2d 943, 944 (3d Cir. 1984).

Defendants argue that Plaintiff's claims of legal malpractice and breach of fiduciary duty should be dismissed because (1) the doctrine of *in pari delicto* bars the claims because the Insiders engaged in wrongdoing that is imputed to Plaintiff; (2) the claims are barred by the statute of limitations. Defendants also argue that Plaintiff should be barred from bringing any claims insofar as they benefit Con-

---

**2.** Individual sections of the Bankruptcy Code will be cited herein as " § ___."

gress because Congress should not be permitted to benefit from its role in the Insiders' wrongdoing.

## II. *Florida Law Applicable*

As Plaintiff asserts, Florida law clearly applies in this case. All of the relevant activity took place in Florida, including the negotiation and closing of the Sale/Leaseback Transactions and the debt transactions between the Debtors and Defendants. All but one of the Sale/Leaseback Transactions involved real property located in Florida. Additionally, Defendants are two Florida entities and an individual Florida attorney. Defendants state that they are unsure whether Delaware law or Florida law should apply to corporate governance issues in this case, given that the Debtors are incorporated in Delaware. I do not believe there are any relevant Delaware corporate governance issues that need to be resolved in this case. In any event, the dispute centers around the *in pari delicto* doctrine, which, according to Defendants, is the same under Florida and Delaware law.

## III. *In Pari Delicto*

■ "The doctrine of *in pari delicto* provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 354 (3d Cir.2001). The entire phrase *in pari delicto potior est conditio defendantis* translates literally to mean, "[i]n a case of equal or mutual fault ... the position of the [defending] party ... is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985) (citing *Black's Law Dictionary* 711 (5th ed.1979)). As an equitable doctrine, *in pari delicto* applies to prevent culpable parties from benefitting from their wrong-

doings, *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,* 437 F.3d 1145, 1152 (11th Cir.2006), and to ensure that courts do not "lend their good offices to mediating disputes among wrongdoers." *Bateman Eichler, Hill Richards, Inc.,* 472 U.S. at 306, 105 S.Ct. 2622.

■ Plaintiff argues that the *in pari delicto* doctrine does not apply here because Plaintiff has only alleged legal malpractice, breach of fiduciary duty and fraudulent transfer. Plaintiff points out that all of the cases that Defendants cite that apply the doctrine of *in pari delicto* contain allegations of fraud, Ponzi scheme or criminal conduct and the accused third party's actions arose out of such conduct. Plaintiff, however, has failed to cite any case that limits the application of the *in pari delicto* doctrine to cases involving alleged fraud, Ponzi scheme or criminal conduct. To the contrary, under Florida law, the "fraud *or misbehavior*" of an agent is imputed to the principal under the *in pari delicto* doctrine. *Beck v. Deloitte & Touche,* 144 F.3d 732, 736 (11th Cir.1998) (emphasis added). Likewise, in *Mediators, Inc. v. Manney (In re Mediators, Inc.),* 105 F.3d 822 (2d Cir.1997), the court applied the doctrine of *in pari delicto* to bar the claims of a trustee against a third party where there was no alleged fraud, Ponzi scheme, or criminal conduct. In that case, the debtor's sole shareholder and president purchased the debtor's art collection at an allegedly undervalued price in order to shield it from the debtor's creditors. *Id.* at 824. The creditors' committee sued a law firm and an accounting firm that facilitated the transaction and a bank that provided a loan for the transaction. *Id.* The Second Circuit, agreeing with the district court, ruled that "the Committee, standing in the shoes of the debtor, could not recover from third parties for their participation in a scheme that

the debtor had itself initiated and joined in." *Id.* The absence of allegations of fraud, Ponzi scheme or criminal behavior did not factor into the court's judgment at all. *See also Tolz v. Proskauer Rose LLP (In re Fuzion Techs. Group, Inc.),* 332 B.R. 225, 230–31 (Bankr.S.D.Fla.2005) (discussing the *in pari delicto* doctrine in connection with professional negligence claims).

## A. The In Pari Delicto Doctrine and the Florida Comparative Fault Statute

 Plaintiff argues that the common law doctrine of *in pari delicto* does not apply in this case because it is trumped by an applicable Florida comparative fault statute. FLA. STAT. § 768.81(2)(2006). That statute provides:

> In an action to which this section applies, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.

*Id.* Though this statute appears to be on point, a later subsection limits its applicability:

> This section applies to negligence cases. For purposes of this section, "negligence cases" includes, but is not limited to . . . professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories:

FLA. STAT. § 768.81(4)(a)(2006). Although the case at hand is a professional malpractice suit, Plaintiff is not claiming negligence. It is clear from the complaint that Plaintiff believes Defendants knowingly represented conflicting parties in violation of Florida Bar Rule 4–1.7(a)[3] because Plaintiff alleges that Defendants prepared conflict waiver letters for the Debtors and the Insiders to sign. (Adv.Doc. # 1, ¶¶ 49, 66.) Moreover, the complaint alleges that Defendants "breached their fiduciary duties owed to Scotty's by knowingly and willfully assisting [the Insiders]" and that Defendants "had knowledge of the facts and circumstances supporting a finding that the directors and officers of Scotty's breached their fiduciary duties, and rendered substantial assistance in regard to such breaches." (*Id.* at ¶¶ 79, 102.) Nowhere in the complaint is there an assertion of negligence.

Even if the case at hand were a negligence case, it is still not clear that the Florida comparative fault statute would apply. Florida courts have frequently applied the *in pari delicto* doctrine without even mentioning FLA. STAT. § 768.81(2). *See, e.g., In re Fuzion Techs. Group, Inc.,* 332 B.R. 225 (plaintiff alleged that defendant law firm negligently permitted the debtor's majority shareholder, chairman and CEO to misappropriate millions of dollars); *Welt v. Sirmans,* 3 F.Supp.2d 1396 (S.D.Fla.1997) (plaintiff alleged that defendant attorneys committed professional negligence by failing to report the true condition of the corporation and by allowing directors to keep the company running in insolvency); *Seidman & Seidman v. Gee,* 625 So.2d 1 (Fla.3d Dist.Ct.App.1992) (plaintiff alleged that defendant accounting firm negligently failed to discover fraud perpetrated by managing director).

---

**3.** Florida Bar Rule 4–1.7(a) provides:

(a) Representing Adverse Interests.—Except as provided in subdivision (b), a lawyer shall not represent a client if:

(1) the representation of 1 client will be directly adverse to another client; or

(2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Courts that have applied the *in pari delicto* doctrine in other states that have comparative fault statutes have similarly failed to make any mention of those statutes in their decisions. *See, e.g., Hill v. Gibson Dunn & Crutcher, LLP (In re ms55, Inc.)*, 338 B.R. 883, 897 (Bankr. D.Colo.2006) (applying the *in pari delicto* doctrine under Colorado law while making no reference to Colorado's comparative fault statute, COLO. REV. STAT. § 13–21–111.5 (2006)); *Lafferty*, 267 F.3d 340 (applying the *in pari delicto* doctrine under Pennsylvania law while making no reference to Pennsylvania's comparative negligence statute, 42 Pa. Cons.Stat. § 7102 (2006)); *In re Mediators, Inc.*, 105 F.3d 822 (applying the *in pari delicto* doctrine under New York law while making no reference to New York's comparative negligence statute, N.Y. C.P.L.R. § 1411 (McKinney 2007)).

### B. *Imputing the In Pari Delicto Defense from the Insiders to the Debtors*

■ Under Florida law, the acts of an agent are imputable to the principal when the agent is acting on behalf of the principal rather than in furtherance of the agent's own interests. *See Gee*, 625 So.2d at 2. Therefore, an *in pari delicto* defense that applies to an agent may impute to the agent's principal. *Id.*

■ However, under the adverse interest exception to the *in pari delicto* defense, the wrongful acts of an agent are not imputed to the agent's principal when the agent's actions are adverse to the principal's interests. *Id.* at 2–3; *Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir.2000). This exception is only applicable when the agent is acting entirely adverse to the principal, and the principal is in no way benefitting from the agent's actions. *Beck*, 144 F.3d at 736 ("Florida law requires that a corporate officer's in-

terest be entirely adverse for the exception to apply (i.e., his actions must neither be intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation).").

■ Plaintiff argues that the wrongful acts of the Insiders cannot be imputed to the Debtors because the Insiders were acting on their own initiative and for their own benefit when they orchestrated the Sale/Leaseback Transactions and the loans to the Debtors. Defendants argue that the adverse interest exception does not apply in this case because the Insiders did not act entirely adverse to the Debtors. The Debtors received some benefit from the Insiders' actions, Defendants argue, because the Sale/Leaseback Transaction and the loans from the Insiders helped the Debtors to pay down the Debtors' debt to Congress and also demonstrated the Insiders' good faith belief in the long term viability of the Debtors. These benefits may seem somewhat trivial considering the alleged grandiose benefits that the Insiders received from the transactions. However, courts do not apply the adverse interest exception unless the agent acts entirely in his or her own interest with no benefit to the principal. *In re Grumman Olson*, 329 B.R. 411, 426 (Bankr.S.D.N.Y. 2005) (refusing to apply the adverse interest exception where the debtor's former CEO sold the company—which the court believed to be in the debtor's best interest—while also negotiating to become a consultant for the purchaser); *see, also, In re ms55, Inc.*, 338 B.R. at 897; *Baena v. KPMG LLP*, 389 F.Supp.2d 112, 119–120 (D.Mass.2005), *aff'd*, 453 F.3d 1 (1st Cir. 2006). Because the Debtors received some benefit from the Insiders' actions, the adverse interest exception does not apply, and the acts of the Insiders are therefore imputed to the Debtors.

■ However, even if the Insiders had acted entirely adverse to the Debtors' in-

terests, the Insiders' actions would still impute to the Debtors because the adverse interest exception "is itself subject to an exception—the 'sole actor' exception." *Lafferty,* 267 F.3d at 359. Under the sole actor exception, if the agent who acts adversely to the interests of the principal is the sole representative of the principal, then the actions of the agent are imputed to the principal notwithstanding that agent's adverse interest. *Id.* "The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability." *Id.*

■ Defendants argue that the sole actor exception applies because the Debtors' board of directors was acting as the Debtors' sole representative. A board of directors voting unanimously qualifies as a sole actor for purposes of the sole actor exception. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 165–66 (2d Cir.2003). It does not matter that the Debtors had one member of the board who may have been acting disinterestedly in approving some of the disputed transactions in this case. *See, Lafferty,* 267 F.3d at 360 ("Courts have additionally applied the [sole actor] exception to cases in which the agent "dominated" the corporation.... The possible existence of any innocent independent directors does not alter the fact that the [wrongdoing directors] controlled and dominated the Debtors."). At all relevant times, the Debtors' board was dominated by self-interested directors, i.e., the Insiders.

C. *Imputing the In Pari Delicto Defense from the Debtors to Plaintiff*

While it is clear that the Insiders' wrongdoing imputes from the Insiders to the Debtors under the *in pari delicto* doctrine, the next question is whether the Insiders' wrongdoing imputes to Plaintiff, the Debtors' chapter 7 trustee. Trustees appointed in a bankruptcy case have the right to "commence and prosecute any action or proceeding in behalf of the estate before any tribunal." Fed. R. Bankr.P. 6009. Section 541(a)(1) states that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Causes of action are included in the broad language of § 541(a)(1) as one of the types of interests that enter the estate. 5 Lawrence P. King, ed., *Collier on Bankruptcy* ¶ 541.08 (15th ed. 2006) ("The estate created pursuant to section 541(a) includes causes of action belonging to the debtor at the time the case is commenced."). Some courts have ruled that the text of § 541(a)(1) unambiguously supports the notion that an *in pari delicto* defense that applies to a debtor's claim applies equally if a trustee brings the claim, and therefore there is no need to look to legislative history for clarification. *Edwards,* 437 F.3d at 1150 ("We need not resort to legislative history because the text of section 541(a) is unambiguous, and 'the language of our laws is the law.' ") (quoting *CBS, Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1227 (11th Cir. 2001)); *Lafferty,* 267 F.3d at 356 ("[T]he explicit language of section 541 directs courts to evaluate defenses as they existed at the commencement of the bankruptcy."). Others have looked to legislative history as a guide for interpreting § 541(a)(1). *In re Fuzion,* 332 B.R. at 231–32; Jeffrey Davis, *Ending The Nonsense: The In Pari Delicto Doctrine Has Nothing To Do With What Is § 541 Property Of The Bankruptcy Estate,* 21 EMORY BANKR. DEV. J. 519 (2005).

The Senate and House Reports that accompany the Bankruptcy Reform Act of 1978 suggest that Congress did intend for defenses like *in pari delicto* to follow causes of action into the estate:

> Though [section 541(a)(1) ] will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case. For example, if the debtor has a claim that is barred at the time of the commencement of the case by the statute of limitations, then the trustee would not be able to pursue that claim, because he too would be barred. He could take no greater rights than the debtor himself had.

S.Rep. No. 95–989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 95–595, at 367–68 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323. However, in explaining the intended purposes of the Bankruptcy Code section by section, Senator Edwards suggested that defenses that are more personal in nature do not automatically impute to the trustee:

> As section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate.

124 Cong. Rec. H11, 1096 (daily ed. Sept 28, 1978). Though one could argue on the basis of this quote that the *in pari delicto* defense is a personal defense that should not pass on to a bankruptcy trustee, the Eleventh Circuit has pointed out that Senator Edwards' remark appears in a section addressing § 541(d) rather than § 541(a)(1).[4] *Edwards,* 437 F.3d at 1150.

▇ The plain language of the statute and the legislative history clearly suggests that if a claim by a debtor is barred by an *in pari delicto* defense, that same claim brought by a trustee is similarly barred. Every circuit court that has addressed this issue has come to the same conclusion. *Lafferty,* 267 F.3d at 358 (noting that no courts have ruled that in an *in pari delicto* defense does not apply to a trustee in the bankruptcy context); *Edwards,* 437 F.3d at 1150 ("If a claim ... would have been subject to the defense of *in pari delicto* at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense."); *Grassmueck v. Am. Shorthorn Ass'n,* 402 F.3d 833, 837 (8th Cir.2005) ("[T]he equitable defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor."); *Sender v. Buchanan (In re Hedged–Investments Assocs.),* 84 F.3d 1281, 1285 (10th Cir.1996) ("[T]o the extent [that the trustee] must rely on 11 U.S.C. § 541 for his standing in this case, he may not use his status as trustee to insulate the partnership from the wrongdoing of [the debtors and their sole owner]."); *Terlecky v. Hurd (In re Dublin Sec.),* 133 F.3d 377,

---

**4.** Section 541(d) provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

380 (6th Cir.1997), *cert. denied,* 525 U.S. 812, 119 S.Ct. 45, 142 L.Ed.2d 35 (1998) (applying the *in pari delicto* doctrine to ban claims by trustee); *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1094 (2d Cir.1995) (" '[W]hen a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors." ') (quoting *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991)).

Plaintiff relies on two cases from the Southern District of Florida where the courts held that an *in pari delicto* defense that would preclude a claim by a debtor does not impute to a trustee: *Welt v. Sirmans,* 3 F.Supp.2d 1396 and *In re Fuzion,* 332 B.R. 225. In *Welt,* the district court based its inquiry on whether or not allowing the trustee to bring claims would serve the objectives of tort law: i.e. compensating victims and deterring future wrongs. 3 F.Supp.2d at 1401. The court refused to apply the *in pari delicto* doctrine and allowed the trustee to sue attorneys who allegedly permitted the directors to wrongfully extend the life of a hopelessly insolvent debtor, finding that this would serve to compensate the victims and deter future wrongdoing. *Id.* at 1402. In *In re Fuzion,* the debtor's board of directors terminated the debtor's relationship with a member of the board after it was discovered that he had diverted the debtor's funds to himself, his family and companies that he owned and operated. 332 B.R. at 229. The appointed trustee initiated a suit against a law firm that allegedly failed to provide appropriate advice to the debtor to avoid wrongs that the dismissed board member committed. *Id.* The bankruptcy court ruled that "as a matter of law, the *in*

*pari delicto* defense does not apply to the bankruptcy trustee." *Id.* at 236. Nonetheless, these two cases have been clearly overruled by the 11th Circuit in *Edwards,* 437 F.3d at 1150.

Although § 541(a)(1), its legislative history, and the appellate courts that have addressed this issue make it clear that claims that are subject to an *in pari delicto* defense enter the bankruptcy estate with the defense inseparably attached, this rule leads to what is arguably an unfortunate result in cases such as the one at hand. The *in pari delicto* doctrine exists to equitably prevent wrongdoers from benefitting from their bad acts. *See Id.* at 1152. Here it applies to bar an innocent trustee from bringing claims that would only benefit innocent creditors, while the wrongdoing Insiders cannot benefit in any way by the outcome of this case.[5]

Other courts have questioned the application of the *in pari delicto* doctrine where its equitable underpinnings are not implicated. For instance, in *Federal Deposit Insurance Corporation v. O'Melveny & Myers,* the Ninth Circuit ruled that an *in pari delicto* defense that applies to a corporation would not apply to that corporation's receiver:

> While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver, or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law. Moreover, when a party is denied a defense under such circumstances, the opposing party enjoys a windfall. This is justifiable as against the wrongdoer himself, not against the wrongdoer's innocent creditors. As we noted in our earlier

**5.** Assuming that the Insiders may be creditors of the estate, were they to be found liable in the Trustee's action against them their claims would most certainly be subordinated pursuant to § 510(c).

opinion: "A receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the [debtor]; it is thrust into those shoes."

61 F.3d 17, 19 (9th Cir.1995) (quoting *FDIC v. O'Melveny & Myers,* 969 F.2d 744, 751 (9th Cir.1992)). Likewise in *Scholes v. Lehmann,* the Seventh Circuit had to determine whether the doctrine of *in pari delicto* bars fraudulent conveyance claims by a receiver against pre-petition recipients of "profits" from a Ponzi scheme. 56 F.3d 750 (7th Cir.1995), *cert. denied,* 516 U.S. 1028, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995). Judge Posner refused to bar the claims because the man who orchestrated the Ponzi scheme had been ousted from control and beneficial interest in the debtor corporations, and therefore there was no concern that the claims by the trustee would allow him to benefit from his wrongdoing. *Id.* at 754. "Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." *Id.*

While the decision in *Scholes* has been recognized as perhaps preferable from a policy standpoint, *In re Hedged–Investments,* 84 F.3d at 1285, *Lafferty,* 267 F.3d at 357, it is inapplicable to the case at hand. Both *O'Melveny & Myers* and *Scholes* involved receivers to whom § 541(a)(1) did not apply as it does to Plaintiff in this case. *Lafferty,* 267 F.3d at 358.

In *Lafferty,* the Third Circuit questioned whether it was obliged to apply the *in pari delicto* defense after the debtor's bad acting management was removed post-petition. *Id.* at 355. Recognizing that the theoretical framework of the *in pari delicto* defense changed once the management had no opportunity of realizing a gain from the trustee's claims against third parties, the Third Circuit focused on whether a court can consider post-petition events when evaluating a claim in bankruptcy. *Id.* at 355–56. On the basis of § 541(a)(1) and the legislative history, the Third Circuit concluded that it could not consider the post-petition dismissal of the debtor's management. *Id.* at 356–57.

Judge Cowan, writing in dissent in *Lafferty,* argued that it does not make sense to extend the equitable principles of the *in pari delicto* doctrine to bankruptcy trustees on the basis of § 541(a)(1), which he calls a "pointless technicality." 267 F.3d at 362. "The point of equitable doctrines is to avoid injustice caused by overly inflexible rules." *Id.*

Judge Cowan cited *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), where the Supreme Court ruled that a trustee could claim as property of the estate a tax loss-carryback refund for a taxable year that ended post-petition. *Id.* at 363. Analogizing *Segal* to this case, Judge Cowan argued that the court should be able to consider the post-petition firing of the debtor's management because the trustee's claims against third parties were so rooted in the pre-petition past.

Taking a cue from Judge Cowan, there are a pair of articles that have been written on this subject that would have courts elevate equity and the policies of the Bankruptcy Code over the language of the Code itself: Davis, *supra,* 21 EMORY BANKR. DEV. J. 519; and Tanvir Alam, *Fraudulent Advisors Exploit Confusion in the Bankruptcy Code: How In Pari Delicto Has Been Perverted to Prevent Recovery for Innocent Creditors,* 77 AM. BANKR. L.J. 305 (2003). Professor Davis argues that courts have the power to trump the state law doctrine of *in pari delicto* with federal bankruptcy policy. Professor Davis argues that the determination of what is property of the estate is a federal question, and therefore "courts are ... empowered

to view the *in pari delicto* defense in light of its effect on federal bankruptcy policy." Davis, *supra,* at 538. While it is true that determining what is property of the estate under § 541 is a federal question, i.e., an issue for decision by a federal court having jurisdiction, courts must use state law to analyze and define the debtor's interest in property unless the Bankruptcy Code explicitly preempts state law. *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law.").

> Mr. Alam in his article argues that
>
> § 541 should not freeze in time the factual basis for the claims and defenses to a litigation action that is based on a fluid factual underpinning. *In pari delicto,* after all, is concerned with whether a wrongdoer is in the position to recover for his wrong, therefore it makes no sense to analyze the underlying facts frozen at a certain time. If the wrongdoer is eventually removed from a position of recovery, that development should be a key fact whether he or she was removed prepetition or postpetition.

Alam, *supra,* at 322–23. While this Court is sympathetic to the notion that it is not good policy to bar innocent trustees and reward guilty third parties under the *in pari delicto* doctrine, the six circuit courts decisions noted above (pp. 18–19, *supra* ), with no circuit court decisions to the contrary, make it clear that there is no basis in the Bankruptcy Code for negating what is a clearly valid affirmative defense under state law. Two recent bankruptcy court decisions unequivocally reaffirm that case law: *In re ms55, Inc.,* 338 B.R. at 893 n. 4 (Negating the *in pari delecto* defense in bankruptcy cases "is a prescription for

judges, in pursuit of equity, to create the bankruptcy law where none exists. ... Whether subjecting the bankruptcy trustee to an *in pari delicto* defense is good policy or bad, it is good bankruptcy law."); *Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.),* 353 B.R. 324, 364 (Bankr.D.D.C.2006) ("This court will not turn a blind eye to the laws actually written by Congress out of misguided fealty to the imagined policies informing it.").

### III. Alleged Wrongdoing by Congress Financial Corporation

Defendants argue that "[i]nsofar as the Trustee brings a claim on behalf of Congress, Congress is stopped by its wrongdoing from benefitting from that claim." (Adv.Doc. # 16, p. 18.) According to Defendants, "Congress knew about, participated in, agreed to and encouraged these allegedly wrongful Insider transactions and received payment on its loans to Scotty's as a result of the transactions." *(Id.)*

The complaint makes no such assertion. The complaint merely recites that Congress' secured loan was paid down partly as a result of the funds received by the Debtor in the transactions engaged by the Insiders, as assisted by Defendants. While the complaint asserts that Congress was aware of the numerous transactions and its loans were partially paid down by the proceeds, it does not assert that Congress engaged in any misconduct or was aware of the alleged wrongdoing by the Insiders in effecting these transactions. When deciding a Rule 12(b)(6) motion, the court accepts as true all allegations in the complaint and draws all reasonable inferences from it which the court considers in a light most favorable to the plaintiffs. *Morse,* 132 F.3d at 906; *Rocks,* 868 F.2d at 645. The complaint's allegations with respect to Congress' role in the transactions simply do not support the assertions made

by Defendants that Congress was also a wrongdoer.

There is another reason why this argument has no merit. There is nothing in the record before me that shows Congress to be a creditor of the chapter 7 estate. At the time the petition was filed by the Debtors, Congress had a secured claim in the amount of $13.9 million. During the early stages of the chapter 11 case, the Debtors sold off significant assets. In its proposed disclosure statement (filed prior to the conversion to chapter 7) the Debtors stated that "as of January 24, 2005, the Debtors estimate that the value of their Assets, including, without limitation, Cash, is approximately $23.4 million." (Case Doc. # 436, p. 18.) The record before me does not disclose to what extent Congress' secured claim has been paid. If it has been paid in full, then Congress would not be a beneficiary to a successful pursuit by Plaintiff of causes of action against Defendants. Thus, Defendants' argument about Congress being a potential beneficiary of any recoveries is premature and outside the scope of a Rule 12(b)(6) motion.

## IV. Fraudulent Transfers Count (Count III)

So far as I can discern from the briefs, the parties have not otherwise addressed the fraudulent transfers count (Count III) brought pursuant to §§ 544, 548 and 550 and Chapter 726 of the Florida statutes. That Count does not have an *in pari delicto* infirmity, *Lafferty*, 267 F.3d at 356. At this stage of the proceeding Count III still stands.

## CONCLUSION

Based on the reasoning outlined above, Defendants motion to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted with respect to Plaintiff's claims of legal malpractice (Count I) and breach of fiduciary duty (Count II) and denied with respect to Plaintiff's claims for fraudulent transfers (Count III).

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Defendants' motion (Doc. # 15) to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED** with respect to Plaintiff's claims of legal malpractice (Count I) and breach of fiduciary duty (Count II) and **DENIED** with respect to Plaintiff's claims for fraudulent transfers (Count III).